OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY
v. BERNARD CLARKE.

FILED JANUARY 16, 1894.   No. 4309.

1. **Railroad Companies**: ESCAPING STEAM: NEGLIGENCE: PERSONAL INJURIES: EVIDENCE. In order to render a railroad company liable for injuries caused by horses running away in

consequence of fright caused by steam escaping from the valves of an engine, it must appear not only that the opening of the valves was unnecessary, but also that it was done under such circumstances as to imply a failure to exercise that care which a prudent and reasonable man would exercise under similar circumstances.

2. While negligence is an inference to be drawn from the facts, the existence of the facts themselves must not be left to conjecture, but facts must be established by evidence which would warrant a reasonable man in inferring negligence.

3. The evidence in this case re-examined, and *held* insufficient to sustain the verdict.

REHEARING of case reported in 35 Neb., 867.

*John M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error:

The burden of proof was upon the plaintiff. There is no evidence that the defendant's servant, in the management of the engine, unlawfully and unnecessarily opened the valves, and frightened the plaintiff's horses. The motion to direct a verdict for defendant should have been sustained. (*Howard v. Union F. R. Co.,* 30 N. E. Rep. [Mass.], 479; *Favor v. Boston & L. R. Co.,* 114 Mass., 350; *Abbot v. Kalbus,* 74 Wis., 506; *Schuylkill & Dauphin Improvement Co. v. Munson,* 14 Wall. [U. S.], 448; *Morrison v. Phillips & Colby Construction Co.,* 44 Wis., 405; *Toomey v. London, B. & S. C. R. Co.,* 3 C. B., n. s. [Eng.], 146; *Ryder v. Wombwell,* 4 Ex. L. R. [Eng.], 39; *Pennoyer v. Allen,* 56 Wis., 512; *Union P. R. Co. v. Billeter,* 28 Neb., 430; *Brabbits v. Chicago & N. W. R. Co.,* 38 Wis., 290.)

*F. P. Wigton* and *E. F. Gray, contra:*

There was proof to sustain the allegations of plaintiff's petition. It was properly submitted to the jury. The question of negligence was for the jury. The company,

under the evidence, is liable. (*Atchison & N. R. Co. v. Bailey*, 11 Neb., 332; *Omaha, N. & B. H. R. Co. v. O'Donnell*, 22 Neb., 476; *Smith v. Sioux City & P. R. Co.*, 15 Neb., 583; *Johnson v. Missouri P. R. Co.*, 18 Neb., 690; *Gordon v. Boston & M. R. Co.*, 58 N. H., 396; *Toledo, W. & W. R. Co. v. Harmon*, 47 Ill., 298; *Manchester, S. J. & A. R. Co. v. Fullarton*, 14 C. B., n. s. [Eng.], 53; *Culp v. Atchison & N. R. Co.*, 17 Kan., 475; *Andrews v. Mason City & Ft. D. R. Co.*, 42 N. W. Rep. [Ia.], 513; *Philadelphia & R. R. Co. v. Killips*, 88 Pa. St., 405; *Walker v. Boston & M. R. Co.*, 13 Atl. Rep. [N. H.], 649; *Gulf, C. & S. F. R. Co. v. Box*, 17 S. W. Rep. [Tex.], 375; *Northern P. R. Co. v. Sullivan*, 53 Fed. Rep., 219; *Hill v. Portland R. Co.*, 55 Me., 438; *Nashville & C. R. Co. v. Starnes*, 9 Heisk. [Tenn.], 52; *Stamm v. Southern R. Co.*, 1 Abb. N. C. [N. Y.], 438; *Hart v. Chicago, R. I. & P. R. Co.*, 7 N. W. Rep. [Ia.], 9.)

IRVINE, C.

An opinion in this case affirming the judgment of the district court was filed December 20, 1892, and is reported in 35 Neb., 867. A rehearing has been granted upon the question of the sufficiency of the evidence, the question being raised upon the proof of negligence upon the part of the plaintiff in error. The statement of facts in the former opinion suffices, without much by way of addition, for this.

The facts alleged for the purpose of establishing negligence on the part of the plaintiff in error may be analyzed as follows:

First—That the railroad company negligently permitted its engine to stand for an undue length of time at the north margin of the street. There is absolutely no evidence tending to establish these averments and a further consideration of the point is unnecessary.

Second—That the railroad company unlawfully neglected to have any flagman at the street crossing. The duty of

a flagman is clearly to keep a lookout and warn persons using the street of the approach of trains. Necessarily he cannot have any knowledge of the fact that locomotives receding or standing on the track are about to let off steam, and it is not his duty to warn passers-by of the fact that steam is about to escape. The presence or absence of a flagman could not in any manner affect the case, and there could be no recovery upon these averments. The jury was expressly so instructed and the instruction was correct.

Third—That as the plaintiff below approached the crossing the railroad company, by its servants, negligently, wrongfully, unlawfully, suddenly and without warning, let off and discharged steam from the locomotive and from its cylinders in great volume and noise, whereby plaintiff's horses were frightened, ran away, and threw the plaintiff from his wagon, causing the injuries.

It is upon these averments that the judgment must stand, if at all, and the court so treated the case upon the former hearing. The conclusions reached by the court upon the legal questions thus presented were there stated as follows: "A railway company in the legitimate transaction of its business has the right to use steam and is not liable for the proper and necessary use of the same, even if it result in injury to others, as by frightening horses and causing them to run away. If, however, an engineer within a city, where teams are constantly passing, needlessly and unnecessarily opens the valves of his engine and frightens such horses and causes them to run away and commit injury, the company will be liable, provided the plaintiff is free from contributory negligence." It was also held that the allegation that steam was blown off negligently, wrongfully, and unlawfully, implied that such action was unnecessary. We have no doubt that the petition stated the cause of action correctly. It was held in the former opinion that the railroad company would be liable for an injury sustained by reason of such an accident where the

horses were frightened by an engineer's negligently per-
mitting steam to escape from his engine; but where it is
said that the company is liable when such act is done un-
necessarily, the term "unnecessary" must not be limited
in its application to an absolutely unavoidable escape of
steam.    As said by the court in the syllabus of the former
opinion, a railroad company has the right to use steam and
is not liable for the proper and necessary use of the same,
even if it results in an injury to others.    The railroad
company is in such cases liable for injuries caused by its
negligence and its negligence alone.    Its liability is to be
measured by the same rule as that of an individual under
similar circumstances.    It is not for the consequences of
every act not strictly necessary that one is responsible.
I may drive along a highway for pleasure, no motive
except seeking my own amusement inducing me to do
so.    The fact that I am so driving may cause an in-
jury, but I am not responsible in damages therefor,
simply because it was not necessary for me to be driving
at that place and at that time; but if I am to be held re-
sponsible, it must be because I failed to exercise reasonable
care in the manner of my driving.    I may make alterations
in my sidewalk and some one passing during the progress
of those alterations may be injured, but I cannot be held
responsible solely because it was not a matter of necessity
for me at that time to make such alterations; but if I am
responsible, it must be because I failed to observe reason-
able care in making such alterations at the time and under
the circumstances.    In other words, an act cannot be deter-
mined negligent simply from the fact that it was not
strictly necessary; but in order to constitute negligence
there must either be the omission to do something which
a reasonable man, guided by those considerations which
ordinarily regulate the conduct of human affairs, would do,
or the doing of something which a prudent and reasonable
man would not do. (*Foxworthy v. Hastings*, 31 Neb., 825.)

We think, therefore, that the terms "needless" and "unnecessary," in the former opinion, are not to receive a strict construction but are to be taken in connection with the rule that the railroad company was liable only for negligence, and that in the legitimate conduct of its business it had a right to discharge steam from its locomotive even within the limits of a city and near traveled thoroughfares, provided in so doing it acted as a person of prudence would act under similar circumstances. Numerous authorities have been cited upon this branch of the case. Many of them are from states where the courts undertake to say as a matter of law whether or not a given state of facts constitutes negligence. Where this is done it is equivalent to saying that the circumstances only are questions of fact, and the inference to be drawn from them a question of law. This is not the rule in this state, but upon the contrary the rule here is that even where the facts are undisputed, but where, upon such facts, different reasonable minds may honestly draw different conclusions as to whether or not such facts establish negligence, the inference to be drawn is a question for the jury and not for the court. (*City of Lincoln v. Gillilan*, 18 Neb., 114; *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642; *American Water-Works Co. v. Dougherty*, 37 Neb., 373.)

Starting, then, from these premises let us examine the evidence. The engine at the time the accident occurred was engaged in switching. It is not absolutely certain whether at the time the team took fright the engine was at a standstill or moving very slowly. It had crossed the street and had either come to a stop or was moving very slowly away from the street and was about to stop. There is much evidence to show that steam was escaping from the pop-valve, and it is within the ordinary experience of men that steam in so escaping makes a loud noise likely to frighten horses. There is also much evidence in regard to these pop-valves. They are necessary appliances for the safety of the engine.

In fact they are safety valves so adjusted as to open automatically when the steam reaches a certain pressure, and so permit the escape of steam before the pressure becomes so great as to endanger lives and property. The evidence shows without contradiction that an engine, especially when engaged in switching, must necessarily be kept at a steam pressure near the limit, and that while engineers endeavor so far as possible to prevent the accumulation of steam to such an extent as to cause the pop-valves to open, exigencies are such that it is impossible to absolutely regulate the accumulation of steam, and an escape from the pop-valve necessarily frequently occurs. Had this engine not been provided with a pop-valve, or had the pop-valve been permitted to get out of repair whereby an explosion occurred, there can be no doubt that negligence might be inferred from such a state of facts. It follows necessarily that negligence cannot be predicated under ordinary circumstances because there was a proper pop-valve, and because it did perform its proper office by permitting steam to escape in order to prevent a dangerous pressure.

Did the evidence show that the engine had been permitted to stand a long time at the crossing with the steam unnecessarily kept at a high pressure, it may be that such facts, followed by an escape of steam at the pop-valve, would justify an inference of negligence. But there is no evidence to show such a state of affairs. On the contrary, the uncontradicted evidence shows that, owing to the varying loads to be hauled by an engine engaged in switching, the steam must be kept at a high pressure; that the quantity of steam to be used from time to time cannot be accurately predetermined, and that the engine upon this occasion had not been allowed to stand with the steam unnecessarily kept up, but that it was then engaged in switching, and had either not yet stopped or had just been brought to a stop when the accident occurred. We are thus brought to a consideration of the averment that steam was unnecessarily allowed to

escape from the cylinders, and that caused the accident. As to whether or not steam was escaping from the cylinders the evidence is conflicting. Several witnesses testify positively that they saw steam escaping from such a part of the engine that it must have come from the cylinder cocks. The weight of this evidence was subject to criticism. In the first place these witnesses were all persons whose attention was casually attracted to the affair, and while it seems it was first drawn to the escaping steam, it was almost instantly diverted to the runaway horses and then to the injured plaintiff. The means of observation of these witnesses were therefore limited and their recollections not entirely to be trusted. In the next place their testimony upon this point met with direct and positive contradiction. These were questions, however, to be considered by the jury, and the evidence was sufficient to permit a finding that steam did escape from the cylinder cocks. It also appears that when steam escapes from the cylinder cocks it is because of a voluntary act on the part of the person in control of the engine in opening the valves. It further appears that these cylinder cocks are provided for the purpose of allowing condensed steam to escape from the cylinders, and that it is necessary to use them for that purpose in order to prevent the cylinder heads from being blown out. When the plaintiff rested his case the evidence upon this point simply showed that steam was escaping from the cylinder cocks. A motion was then made to direct a verdict for the defendant, which was overruled. We think there was nothing at this stage of the case to permit an inference of negligence. Negligence cannot be inferred from the mere fact that an accident happened. Negligence cannot be inferred from the mere fact that an act was done which it is proper, and even necessary, to do at some times and under some circumstances. Some evidence must be given of facts and circumstances from which a reasonable man might infer that in doing the act at that particular time and under

those particular circumstances the defendant failed to exercise due care and prudence.    There was no evidence on the part of the plaintiff to show at what times and under what circumstances it was necessary to open the cylinder cocks.    The evidence produced by the defendant certainly did not strengthen the plaintiff's case.    The engineer testified that the cylinder cocks might have been open at the time; but if they were, there could have been no forcible discharge of steam under the circumstances existing as to the operation of the engine at that moment.    He did not see the plaintiff until after the horses were frightened. His train was moving away from the street, or had, practically, at that instant, come to a stop after moving in that direction, and if he were observing his duty his attention would probably be turned away from the street and not towards it.    There is no evidence to show that he willfully or wantonly, within the rule set out in Thompson on Negligence, cited in the former opinion, opened the cylinder cocks, and we can find no evidence permitting an inference that a state of facts existed which would have induced a reasonably prudent man to have kept them closed at the time in question.    While negligence is an inference to be drawn by the jury from facts established, facts warranting such an inference must be established by evidence, and a jury must not be left to conjecture,—to infer not only negligence but the existence of facts which would constitute negligence. (*Kilpatrick v. Richardson*, 37 Neb., 731.) Where one generally has a right to do an act, in order to predicate negligence upon the doing of it in a particular instance, the burden is upon the plaintiff to show such facts and circumstances as rendered the doing of it in that instance negligent.    The burden is not upon the defendant to show that the act was not negligent.    Such is the case here.    The opening of the cylinder cocks was, in general, a proper and reasonable act to be performed.    It could only be negligence to open them in a particular instance,

when there was no necessity of so doing, and when, in addition to that, the circumstances were such that a reasonably prudent man would not do so.    The burden was upon the plaintiff to show that such special circumstances existed, and there is a complete and total failure of evidence upon the point.

REVERSED AND REMANDED.