CITY OF BEATRICE V. ELLEN LEARY.

FILED MAY 21, 1895.   No. 6303.

1. Surface Water: MUNICIPAL CORPORATIONS: NEGLIGENCE: DAMAGES.   The Big Blue river flows south through the city of Beatrice and crosses Court street at right angles.   The plaintiff's property is situate on the north side of this street and west of the river.   Mary and Scott streets are south of and parallel to Court street.   Cedar street extends north and south and opens into Court street immediately south of the plaintiff's property. A draw, having its origin in the hills some miles southwest of plaintiff's property, meandered north and east to Cedar street, thence north to Court street, and there emptied into a ditch or drain extending down Court street to the river.   This draw, in connection with the ditch in Court street, was a natural conduit through which the surface waters from rains and melting snows on a large area of country found their way to the Blue river. The city of Beatrice, on the petition of the plaintiff and other property owners, graded and paved said Court street and filled up the ditch therein, thus damming the draw in front of plaintiff's property.   To carry off the waters that were accustomed

to go down said draw the city built dikes across it at Scott and Mary streets and cut ditches down said streets from the draw to the river.  During the heavy rains in the spring of 1892 the waters came down said draw to Court street, and being there obstructed by the filled ditch, overflowed the street and flowed on plaintiff's premises and damaged them.  She sued the city, alleging that it had negligently omitted to provide suitable outlets for the waters that were accustomed to come down said draw after having filled the ditch in Court street, and that such negligence was the proximate cause of the damage to her property.  *Held*, (1) That the evidence sustained the finding of the jury that the plaintiff's property was damaged by the overflowing waters which came down the draw to Court street and were unable to escape to the river by reason of the ditch in Court street being filled and the draw thereby obstructed; (2) that the overflow of the waters which damaged plaintiff's property was brought about by the act of the city in filling the ditch in Court street and failing to provide sufficient outlets down Mary and Scott streets or elsewhere to carry the waters from the draw into the river; (3) that such negligence on the part of the city was the proximate cause of the injury sustained by the plaintiff.*

2. ———: DAMAGES.  The doctrine of this court is the rule of the common law, that surface water is a common enemy and an owner may defend his premises against it by dike or embankment; and if damages result to adjoining proprietors by reason of such defense he is not liable therefor.

3. ———: ———: NEGLIGENCE.  But this rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor.

4. ———: ———: ———.  And, therefore, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage; but if in the execution of such enterprise he is guilty of negligence,

---

*For further discussion of the law relating to surface water, negligence, and damages, see *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb., 406, *Lincoln Street R. Co. v. Adams*, 41 Neb., 737, *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb., 897, *Bunderson v. Burlington & M. R. R. Co.*, 43 Neb., 545, and *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb., 526, and cases cited.

which is the natural and proximate cause of injury to his neighbor, he is accountable therefor. *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb., 526, and cases there cited followed.

5. ———: ———: ———: EVIDENCE. The city had the right to take such steps and perform such acts as in its judgment were necessary to protect its street from surface waters; but while it had this right, it was charged with the duty of exercising it with ordinary care. It was bound to know that this draw was the natural conduit through which the surface waters were wont to find their way to the river, and when it filled up the ditch in Court street into which this draw emptied it was charged with the duty of constructing sufficient ditches and outlets to carry the surface waters coming down the draw to the river.

6. Municipal Corporations: DRAINAGE: NEGLIGENCE: DAMAGES. It seems that negligence may be imputed to a municipal corporation and it may be made liable for damages resulting therefrom if its council and mayor, acting in good faith, adopt an insufficient or defective scheme or plan of drainage.

7. ———: ———: ———: ———. The act of the city in building dikes at Scott and Mary streets, and cutting ditches along those streets to the river, were ministerial acts.

8. ———: ———: ———: ———. Whether such ditches were properly constructed, and were of sufficient capacity for the purposes intended, were questions of fact; and whether their construction in the manner that they were constructed amounted to negligence on the part of the city was also a question of fact.

9. Estoppel: DAMAGES. The plaintiff by petitioning the city to grade and pave Court street did not estop herself from claiming damages as the result of the negligent omission of the city to provide suitable outlets for carrying off the water from the draw.

10. Instructions. Instructions in a case should be few in number and should present to the jury the law applicable to the issues in the case in simple language and terse sentences. Numerous instructions or instructions with long and involved sentences are more likely to confuse the jury and lead it astray than to enlighten it and direct it to the material points of the case.

ERROR from the district court of Gage county. Tried below before BUSH, J.

*E. O. Kretsinger*, for plaintiff in error.

*George A. Murphy, contra.*

RAGAN, C.

The Big Blue river runs south through the city of Beatrice, crossing Court street at right angles. The property of Mrs. Ellen Leary, consisting of some city lots and a dwelling house thereon, is situate on the north side of Court street and some distance west of where said street crosses said river. Cedar street opens into Court street immediately south of Mrs. Leary's property. One block south of Court street and parallel thereto is Mary street, and one block south of Mary street and parallel thereto is Scott street. The country to the south and west of Mrs. Leary's property inclines to the north and east to the river. In the summer of 1891, and prior thereto, a draw or swale, heading in the foot-hills of said river, some miles southwest of where the river intersects Court street, meandered from the hills in a northeasterly direction and entered Cedar street south of Scott street, thence along Cedar street into Court street immediately south of the Leary property, and there opened into a ditch or gulley extending down Court street to the Blue river. It seems from the record that the ditch was an artificial channel that had been made to take the place of the draw which had once extended down Court street to the river. In the summer and autumn of 1891 the city of Beatrice graded and paved Court street west of the river to a point west of the Leary property, and in doing so filled up the ditch in Court street through which the waters from the draw or swale above mentioned had been accustomed to find their way to the river. The draw was not a running stream as that term is commonly understood, although it would seem from the evidence that there was some water in some portions of it during most of the year. The draw was in fact a natural conduit through which the surface waters resulting from rains and melting

snows on a large area of country found their way to the Blue river. Mrs. Leary brought this suit in the district court of Gage county against the city of Beatrice. She alleged that in the spring of 1892 the waters came down in this swale or draw from the southwest along Cedar street to Court street and, being unable to escape to the river, overflowed said street and flowed on and damaged her property. The ground of negligence alleged by her against the city, and made the basis of her action, was that the city in grading and paving Court street filled up said ditch and failed to provide any outlet for the waters which were accustomed in times of rains or freshets to flow down in said swale or draw and thence escape by said ditch into the river. The city, in addition to a general traverse of the material allegations of the petition as to its negligence, pleaded as a defense to the action that the grading and paving of Court street were done upon the petition and request of the abutting property owners of said street—Mrs. Leary being among the number of said petitioners; and that by reason of her petitioning the city to grade and pave said street in the manner it did she was estopped from claiming damages against the city resulting from said paving and grading. A further defense was that the damages sued for were the result of an unprecedented and violent rain storm and flood of such a character as to be, in contemplation of law, the act of God. Mrs. Leary had a verdict and judgment, to reverse which the city has prosecuted to this court a petition in error.

1. The first contention of the city is that the damages awarded Mrs. Leary are excessive and appear to have been given under the influence of passion or prejudice. This contention cannot be sustained. The damages awarded are less than the damages testified to, and therefore the amount of the damages raises no presumption that the jury was influenced by passion or prejudice in making the award.

2. The second contention is that the verdict is not sustained by sufficient evidence. Two arguments are made in support of this assignment: (1.) That the city, prior to its paving and grading Court street, adopted a plan or scheme for the draining of the waters which were accustomed to come down said draw and ditch into the river; and to carry out this plan the city constructed dams or dikes across the draw at Scott and Mary streets and dug ditches along the sides of said streets from the draw to the river. The sufficiency of these dikes and ditches to accomplish the purposes for which they were constructed was passed upon by the jury, and we cannot say that they came to an incorrect conclusion. (2.) The principal argument, however, under this head is that the finding of the jury that the damages sustained by Mrs. Leary were not the result of the act of God, is wrong. The evidence on this subject was conflicting, and some of it as extraordinary as the freshet or rain storm was alleged to be. A large number of witnesses testified on behalf of Mrs Leary that they had lived in the vicinity of Beatrice for a number of years and that the freshet or rain which injured her property, while it was a great rain, was no greater than other rains they had known there, or, in substance, that the rain was not an unprecedented flood, a cloud burst, or water spout. On the other hand, witness after witness in behalf of the city testified that it was the most violent flood they had ever known. The testimony of two of these witnesses and their names deserve a place in the piscatorial history of the state. One Frank Thompson testified that just prior to the rain he had crossed the draw in question on a pony and immediately after crossing the draw it began to rain, and before he could recross the draw the water had risen in it so high that the pony was compelled to swim, and the flood carried the pony and his rider over a wire fence; that after he had succeeded in crossing the draw he went down to the city—presumably on his pony—and that the flood carried him over more

wire fences; that the draw where he was when the rain began was twelve feet deep and forty feet wide, and that it was filled with water to the top of its banks in one second. The other witness, Schultz, had a barn near Scott street and the draw. He testified that the water rose in the draw up to the top of the roof of the barn and did so in five or six minutes. The record does not disclose whether or not the barn was washed away. It is asking too much of this court to disturb the verdict of a jury, based on evidence like the above. We are not fitted by our profession or training for such a task. Only a jury of the vicinage could find the straight and narrow way of truth and dry land in such storms and flood and Cimmerian darkness as this. The district court told the jury that if they believed from the evidence that the damage done to Mrs. Leary's property was the result of excessive, extraordinary, and unusual cloud bursts, rain storms, and floods, these would constitute under the law an act of God for which the city was not liable, unless they found from the evidence that the negligence of the city contributed in a "large degree along with the act of God" to the damage of the plaintiff. This instruction was correct. (*Republican V. R. Co. v. Fink*, 18 Neb., 89.) The evidence shows that Mrs. Leary's property was damaged by the freshet in the spring of 1892; that she sustained damages equal to the amount awarded by the jury; that her property was damaged by the waters that came down this draw to Court street, and by reason of the draw being there obstructed and the ditch in the street having been filled, were unable to escape to the river, and overflowed on her property; that this overflow was brought about by the act of the city in damming the draw and filling the ditch in Court street and failing to provide sufficient outlets or ditches down Mary and Scott streets or elsewhere to vent these waters. We therefore reach the conclusion that the finding of the jury, that the negligence of the city was the proximate cause of the in-

jury sustained by Mrs. Leary, has sufficient evidence in the record for its support.

3. Another assignment is that the verdict is contrary to law. Three arguments are made to support this assignment.

It is first insisted that the city had the lawful right to pave and grade Court street, and that in doing so it had a right to defend itself and its property against surface water, the common enemy, by filling the ditch in said street and diking or damming the draw that emptied into said ditch; and that it is not responsible for any damages that Mrs. Leary may have sustained resulting from its actions in that respect. The doctrine of this court is the rule of the common law, that surface water is a common enemy and that an owner may defend his premises against it by dike or embankment, and if damages result to adjoining proprietors by reason of such defense he is not liable therefor; but this rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor; and, therefore, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage; but if in the execution of such enterprise he is guilty of negligence which is the natural and proximate cause of injury to his neighbor he is accountable therefor. (*Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb., 526, and cases there cited.) The city had the right to grade and pave Court street. It had the undoubted right to fill the ditch therein and to dike or dam the draw that emptied into said ditch. In other words, it had the right to take such steps and perform such acts as in its judgment were necessary to protect its street from surface waters; but while it had this

right it was charged with the duty of exercising it with ordinary care. It knew and was bound to know that this draw was the natural conduit from which the surface waters from a large area of surrounding country were wont to find their way to the Blue river; and when it diked this draw at Court street and filled up the ditch in said street it was charged with the duty of constructing sufficient ditches and outlets to carry the surface waters coming down said draw to the river.

Another argument under this assignment is this: Sometime in the spring of 1891 Mrs. Leary and other property owners along Court street petitioned the city of Beatrice to grade and pave said street. The argument is that the city having complied with this petition, Mrs. Leary is now estopped from claiming damages resulting from such grading and paving. It must be remembered, however, that the basis of Mrs. Leary's action against the city is not that her property was damaged simply because the city graded and paved Court street, but her cause of action is founded —and founded only—upon the alleged negligent omission of the city to provide suitable and sufficient outlets for the surface waters of the draw after the city had dammed it and filled the ditch into which it emptied. To sustain his contention counsel cite us to *Hembling v. City of Big Rapids*, 50 N. W. Rep. [Mich.], 741, where it was held : " Where plaintiff joined in a petition to the city council to grade and improve a street abutting his lots, paid his assessment for the improvement voluntarily without objecting to the improvement or the assessment, he is afterwards estopped from claiming damages by reason of the improvement, damming the water course across the street, and causing the water to flow his lots." To the same effect are *City of Pontiac v. Carter*, 32 Mich., 164, and *Collins v. City of Grand Rapids*, 54 N. W. Rep. [Mich.], 889. Whatever may be said of these decisions, they are of no force in this state under our constitution, which expressly provides that

private property shall neither be taken nor damaged for public use without just compensation. It may be that if the city in grading and paving Court street left Mrs. Leary's property either so far above or below grade as to damage it, that she, having petitioned the city to bring the street to grade, would be thereby estopped from claiming damages; but that point is not before us and we do not decide it. It would be going very far indeed to hold that because Mrs. Leary petitioned the city council to grade and pave this street that she thereby waived her cause of action against the city for damages it might do to her property in performing the grading and paving in a negligent manner.

The third argument is that the judgment is contrary to law, because the city adopted a plan for carrying the waters of this draw into the Blue river by building dikes, as already stated, across the draw at Scott and Mary streets and constructing ditches along said streets from the draw to the river; that the city in adopting this plan was exercising legislative functions, and that the city is not liable for any damages that have resulted, although the plan adopted was defective, as it is not liable in the absence of bad faith for a mere error of judgment. The authorities on this question are in hopeless conflict. On the one hand, it is held that the adoption of a plan of drainage by a city is a judicial act on the part of its governing body and that, therefore, the city is not responsible in damages if the plan adopted is insufficient or defective. On the other hand, it is held that the duty of a municipal corporation to provide drains and sewers is ministerial in its character and not judicial; and that municipal corporations are liable for the safety, sufficiency, and the skillful construction of its sewers and system of drainage. In *City of Indianapolis v. Huffer*, 30 Ind., 235, it was held: "An incorporated city is not ordinarily liable for consequential injuries to private property resulting from the grading and improvement of

City of Beatrice v. Leary.

.its streets, if, in making such improvements, reasonable skill and care be used to avoid the injuries. The skill and care which is incumbent relates as well to the plan as to the execution of the work—in the case of a sewer, to its capacity, as well as to the mechanism in its construction." We think this is the better rule. But to sustain the judgment in this case it is not necessary to decide whether negligence can be imputed to a city and it made liable for damages resulting therefrom, because its council, acting in good faith, erred in the plan or scheme of drainage adopted by it. If the city of Beatrice, in adopting the plan it did adopt for conveying the surface waters from the draw in question to the Blue river, exercised legislative functions, if the plan adopted was defective and imperfect, and if the city is not liable because of the adoption of such defective plan, still the building of the dikes at Scott and Mary streets, the cutting of the ditches along those streets to the Blue river, were ministerial acts; and if the city in building said dikes and in constructing said ditches negligently omitted to construct them on sufficient capacity to carry off the waters that were accustomed to flow down said draw, and damages resulted to the plaintiff as the proximate result of such negligent omission, the city was liable. Whether the ditches were properly constructed and were of sufficient capacity for the purposes intended were questions of fact; and whether their construction in the manner that they were constructed amounted to negligence on the part of the city was also a question of fact.

4. Some criticisms are indulged by counsel with reference to the instructions given and refused. We have carefully examined the points made by counsel, and reach the conclusion that no error prejudicial to the city was committed by the court in the giving or refusing of instructions. Without desiring or intending any reflection whatever upon the learned judge who tried this case or of the eminent counsel engaged therein, we deem it our duty to say

that we think the jury in this case was instructed too much. At the request of the plaintiff the court gave the jury twelve instructions; at the request of the city, fifteen; and in addition to these there were six paragraphs or instructions in the charge given by the court to the jury on its own motion. Instructions in a case should be few in number and should present to the jury the law applicable to the issues in the case in simple language and terse sentences. Numerous instructions, or instructions with long and involved sentences, are more likely to confuse the jury and lead it astray than to enlighten it and direct it to the material points of the case. The judgment of the district court is

AFFIRMED.