OMAHA STREET RAILWAY COMPANY V. LILLIE LEIGH, ADMINISTRATRIX.

FILED DECEMBER 2, 1896. No. 7010.

**Master and Servant:** DEATH OF STREET-CAR DRIVER: VICIOUS ANI-
MALS: ACTION AGAINST STREET RAILWAY COMPANY: VERDICT FOR
PLAINTIFF. The evidence in this case examined, and *held* insuf-
ficient to sustain the verdict of the jury.

ERROR from the district court of Douglas county.
Tried below before KEYSOR, J.

*John L. Webster* and *Breckenridge & Breckenridge,* for
plaintiff in error.

*Cowin & McHugh, contra.*

RYAN, C.

An opinion in this case was reported in 36 Neb., 131.
Subsequently, upon being remanded, there was a verdict
for the plaintiff in the district court of Douglas county
in the sum of $3,000, upon which a judgment was duly
rendered. The street railway company, by its petition
in error, seeks a reversal of this judgment.

We have found in the record no question of importance
other than that to which counsel have for the most part
directed their attention, and that is whether or not the
verdict was sustained by sufficient evidence. The rail-
way company was charged in the petition with having
furnished for use on one of its lines a horse of known
vicious disposition, by which Elmer Leigh was, on Sep-
tember 5, 1889, kicked so severely that he died shortly
afterward. There is no sufficient evidence to sustain this
verdict, unless it appeared that a certain horse owned by
the company was the one furnished Leigh to drive. The
street railway at the time of the accident had two horses,
each of which was known by the name of "Dude." It is
conceded that one of these, a very black animal, was ordi-

narily of a gentle disposition, and by the company it is insisted that this was the animal which kicked Leigh, being thereto provoked by his negligent conduct in repeatedly striking it under the flank with the lines. The other animal was of such a dark brown or dark bay color that when it had first shed its coat it might be properly described as black. The defendant in error insists that there was such evidence as justified the jury in assuming that the horse that kicked Leigh was the dark brown one, as to which, without question, the proofs were satisfactory that it was of a vicious disposition, of which disposition the company was sufficiently aware.

Mr. Leverton was foreman of the barn of the company on Twenty-sixth and Lake streets, and testified, upon being called as a witness by the defendant in error, that the horse that kicked Mr. Leigh was called by the name of "Dude." Daniel Martin, another witness for the defendant in error, then testified that he had been in the employ of the company and knew the horse called "Dude," and that this horse was one that would kick while being driven, and that on account of his bad disposition it was usual to work this horse only when there was little travel on the streets. This witness described the horse to which he was referring as dark brown, and not coal black, though at some times of the year he would be called a black horse, and said that this horse was kept for three years at the barn of the company on Twenty-first and Cuming streets, from whence he was transferred to the Lake street barn. This witness further testified that he quit the service of the company in January of the year 1889, and that the above transfer was after that time, some time in the winter or fall. Frank Merritt, another witness of the defendant in error, testified that on September 5, 1889, he was working for the street railway company; that he remembered but one horse known by the name of "Dude" owned by the company; that said horse would kick if he got over the tug, or if whipped, and that this horse, during most of the six years that

witness was in the employ of the company, was kept at the Cuming street barn. This witness fixed the time he quit the employ of the street railway company as three and one-half years before the date of the trial in the district court, which ended on May 14, 1894. He said the horse that he referred to was transferred to the Lake street stable before he quit working for the street railway company, but how long before he could not say. This horse was dark brown. E. B. Seidner, another witness for the defendant in error, testified that he left the employment of the street railway company about four years before the trial at which he was testifying; that he knew a dark brown horse named "Dude" which was kept at the Cuming street barn, and that this horse would not work when first purchased, as witness supposed, and was therefore used as a saddle horse to some extent. M. V. Wilbourn testified on behalf of the defendant in error that he saw Leigh stop his team to take on a passenger; that when he tried to start his horses they would not go; that Leigh thereupon struck the nigh horse with the line, but it reared up and Leigh struck him again; then the horse kicked Leigh twice, whereby was inflicted the injury of which he afterward died. The car at the time was loaded full in front. This witness testified that subsequently he saw, if he was not greatly mistaken, the same horse on the same line at Twentieth and Lake streets, and it was rearing and charging. If it was not the same horse, he said, on cross-examination, it was very much like it.

It was clearly shown, and not contradicted, that the team Leigh was driving when he was injured had been kept at the Lake street barn, and not at the Cuming street barn. This fact illustrates the purpose of the evidence, which was directed toward proving that the vicious horse was taken from the Cuming street barn to the barn on Lake street before Leigh was hurt. While it is possible that this transfer might have been effected before September 5, 1889, it is quite as likely that it was after the

date just mentioned, and if the latter suggestion is correct, it could not have been the dark brown horse which Leigh was required to drive. The testimony last above referred to, as to the actions of the horse at Twentieth and Lake streets, refers to a time subsequent to the time of the accident, hence it had no bearing as affecting the company with notice of the disposition of the horse then seen by the witness, even if it was the black one. There had been no such disposition manifested by the black horse before Leigh was hurt, and this single subsequent instance was therefore unimportant. This witness did not undertake to describe by its color the horse Leigh was driving, so that his testimony in no degree tended to establish the fact that the brown horse was the one which Leigh struck. The car on which Leigh was a driver was, on September 5, 1889, loaded with passengers on their way to the fair grounds. It was attempted to show by the evidence that on such extraordinary occasions there was a necessity for a temporary transfer of horses from one line to another, from which, it is claimed, the inference might be drawn that the dark brown horse had been, on September 5, 1889, taken to the Lake street stable. This, however, if found by the jury, must have been purely a matter of inference, for there was no evidence of it as a fact. In *Kilpatrick v. Richardson*, 37 Neb., 731, it was held that to sustain a verdict for damages on account of an injury suffered by alleged negligence of the defendants there must be evidence that such injury resulted from the negligence charged, and that such causation could not be left to the mere conjecture of the jury. The same principle, in substance, was stated and applied in *Omaha & R. V. R. Co. v. Clarke*, 39 Neb., 65, and in *Kilpatrick v. Richardson*, 40 Neb., 478. A very careful examination of the evidence adduced to show that the plaintiff in error was guilty of negligence, in furnishing the horse for Mr. Leigh to drive, has failed to satisfy us that there was such evidence submitted as enabled the jury to do more than merely conjecture that the dark brown horse

54

might have inflicted the injuries which resulted in the death of Mr. Leigh. There is found no evidence from which it could be fairly inferred that there was negligence in requiring him to drive the black horse; indeed, the docility of this animal is strongly commented upon by counsel for the defendant in error as affording satisfactory evidence that the injury to Leigh must have been inflicted by the other horse. As the proofs failed to do more than to furnish grounds for mere conjecture that Leigh when injured was driving the dark brown horse, there was a failure to show the existence of such negligence as would render the company liable. There was direct testimony that the horse which kicked Mr. Leigh was taken from the Lake street stable and was the black horse. We would not feel justified in acting upon this alone if there had been any satisfactory proof to the contrary, for we recognize the applicability of the rule that where the evidence is such as to afford grounds for different conclusions among reasonable men, the verdict of the jury should not be disturbed. The judgment of the district court is

REVERSED.

IRVINE, C., not sitting.