CITY OF OMAHA v. FANNIE BOWMAN, ADMINISTRATRIX.

FILED SEPTEMBER 22, 1897.   No. 7426.

</div>

52  293
s59  85
e59  87
52  293
e62  70

1. **Municipal Corporations: PONDS: NEGLIGENCE.** With respect to water forming a pond on private property within the limits of a city, but not on, or in dangerous proximity to, a public highway, street, or alley, such city owes no duty to the general public (aside from that of a sanitary character) other than such as devolves on private owners of property similarly situated, even though the city may have created the pond of which complaint is made.

2. **Negligence: EVIDENCE.** Negligence must be fairly inferable from the evidence. Its existence cannot be a mere matter of conjecture, and it must be the proximate cause of the injury complained of.

3. **Cities: PONDS: DEATH OF CHILD: EVIDENCE.** Instructions which assumed that evidence of such overflow of lots by the massing thereon by a city of the water of a running stream as would entitle the lot owners to damages would be proper proof in support of a claim for compensation for personal injury to one who had no interest in the lot itself, *held* erroneous.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J. *Reversed.*

*W. J. Connell* and *E. J. Cornish,* for plaintiff in error.

*Silas Cobb, contra.*

RYAN, C.

This action was brought in the district court of Douglas county by Fannie E. Bowman, as administratrix of the estate of Albert D. Bowman, for the recovery of damages sustained by the estate of the intestate by reason of his death. The deceased, it was alleged in the petition, was about seven years of age when he was drowned in a pond of water which plaintiff in error negligently had permitted to accumulate and be, and remain in, over, and by, the side of Davenport street in the city of Omaha. There was a verdict and judgment against the city in the sum of $1,000. The accident happened on June 15, 1892. The evidence showed that about six years before the date just named the city had constructed an embankment on Davenport street which interfered with the flowing of water from certain lots abutting on said street. The pond in question was caused by this water. The sidewalk was about seven feet from the water and quite a distance above the water level. There seems to be no dispute in the evidence that to reach the water from the street it was necessary that a person should cross an intervening strip of private property at least six feet in width. A few days before the date of the accident some boys tore

up a part of the sidewalk and launched it on the pond. Albert D. Bowman, and some juvenile friends, took possession of this piece of sidewalk and were using it for a raft when young Bowman fell off and was drowned. The mere fact that he was thus drowned was alleged in the petition and admitted in the answer. There was no effort to show whether the deceased reached the pond, as he might have done by passing from his home near by, over private property, or by way of the street. It is not clear from the petition just what acts and omissions on the part of the city are claimed to constitute negligence on its part. There was charged a failure to place a fence, or visible boundary, between the street and the private property adjoining. In view of the fact that it was not claimed that the child entered the water from the street this averment has no bearing on the questions under consideration. The following averments seem to have described the negligence principally, if not entirely, relied upon, and we shall therefore quote them at length: "Plaintiff further states that said pond of water was formed by the water that formerly would have run through a ravine at said place, the same being filled over at said place by said city in constructing and filling up Davenport street at said place, which said water was negligently permitted to accumulate and remain as aforesaid, and the natural outlet for said water being closed and filled up by the defendant city of Omaha a long time previous to the said June 15, 1892, by the city filling up the street at said Davenport, near Twenty-eighth street, and thereabouts, where said death occurred, being filled about five feet on the north side and about fifteen feet on the south side of said Davenport street, and thereby filling up and stopping a creek or ravine that was wont theretofore to flow along where said street was filled as aforesaid, and although there is, and has been a long time prior to June 15, 1892, a sewer about two blocks away from the place of said death, yet there was no provision made for the drainage of said water by the city or

said Moody and Stockdale (the owners of the private property on which the pond was), from said lots, said water thereby being discharged upon said lots in and over and upon Davenport street as aforesaid, and there negligently confined, and negligently by all of said defendants permitted to remain upon said property." In this connection it was alleged that the pond caused in the manner above described had, before June 15, 1892, been dangerous and menacing for many years, was very enticing and attractive to children of tender age, many of whom in that locality were in the habit of playing in said pond of water, and that the dangerous, menacing, and enticing condition of the pond had been well known by said Moody and Stockdale and the officers and authorities of the city of Omaha at the time of and before said death.

The defendant in error was permitted to recover upon a theory rather narrower than that above stated, as appears from the following instruction given by the court: "(1.) The court charges the jury that if the grade and fill was over and across the ravine, through which, prior to the filling, water from springs and the drainage from the vicinity was accustomed to flow, then it was the duty of the defendant, in making said fill, to provide a passageway for the escape of the water which might reasonably be expected to flow along the course of the ravine." The instruction following that above quoted was in this language: "(2.) If by reason of the failure of the defendant when making the fill in Davenport street to provide a culvert or other passage for the water naturally flowing in and along the ravine the pond in question was formed, and you shall so find from the evidence, then that is a fact that you should consider along with other facts as hereinafter instructed in making up your verdict."

In the brief for the defendant in error it is insisted that this court in *City of Beatrice v. Leary*, 45 Neb., 149, has recognized the applicability of the principles laid down in the above instructions to the facts in this case. In

the case just cited there was involved the question of the liability for the diversion of water from a water-course by the city, it is true, but this liability was for physically damaging the real property of a private person. The rule is general that the city may not divert the flowage of a running stream from real property or mass its water on such property, without making compensation for such damage as thereby may ensue to the property-rights of the owner. This principle is in no manner connected, however, with, or correlative of, the proposition contended for, and that is that the massing of the water of a flowing stream on private property renders the city liable to one who has no interest in such property, for whatever personal damages he may sustain from his own voluntary use of such water. It is also urged that these instructions were correctly given in this case in view of the holding of this court in the case of *City of Omaha v. Richards*, 49 Neb., 244, and in the opinion on the rehearing on the same case, reported in 50 Neb., 804. In both the opinions there was enforced the liability of the city for damage caused by the drowning of a child. The negligence of the city consisted in permitting water to collect and remain on a traveled street without any precaution being taken to avoid accidents therefrom to the public. The pond which formed was partly in the street and partly on private property, and it was held that the mere fact that the child had fallen off the improvised raft into the water on the private property did not exonerate the city from the consequences of its negligence. Whether the water was that of a flowing stream or was the accumulation of surface-water was a question of no importance.

As has already, perhaps, been sufficiently indicated, there is presented in the case at bar the question of the liability of a city for the death of a child from drowning in a pond situated on private property. This child is not shown to have used the street in any way, even for the purpose of reaching the pond in which afterwards he

was drowned.  This question is connected with, or modified by, no other, as, for instance, the fact that the city had invited the public to go upon, or even in dangerous proximity to, the water.  In so far as the facts of this case are disclosed there is shown nothing of the acts of the child before its presence on the raft.  That fact was merely alleged and admitted by the pleadings.  The inducement charged was that the water was enticing to a person of the age of this one.  This was a statement of a general proposition applicable to the attraction of any body of water for boyish nature.  In what was the city negligent, in its duty towards the public, by passively permitting, or actively causing, the accumulation of this water on private property?  We have already pointed out the fact that we are not considering the property rights of the owner of the lots whereon the pond was formed. There is involved no element of damage resulting from loathsome smells or from dangerous sanitary conditions permitted by the city in violation of its duties in that respect.  Simply stated the fact is that the city,—so far as the record shows without any objection from the owner of the lots,—overflowed said lots with water.  In respect to the public traveling upon its highways, except as above indicated, the city, with respect to the pond formed in the manner indicated, held the same relations as did the owner of the real property submerged.  In *Richards v. Connell*, 45 Neb., 467, these relations with the attendant obligations and liabilities were fully considered and it was held that a cause of action could arise in none but one of the following classes of cases: "1.  Cases in which the owner of the land has made or permitted a dangerous excavation, or embankment, or the like so near a public highway as to injure one in the rightful use thereof.  *  *  2. Cases in which the defendant has negligently left exposed dangerous machinery likely to attract children and resulting in their injury.  Illustrative of this class which constitutes a recognized exception to the rule are the socalled turn-table cases.  3.  Cases where the plaintiff was

injured while upon the defendant's premises by invitation of the latter, and where the negligence consists in a failure to keep such premises in a reasonably safe condition." This case has been cited with approval in *Peters v. Bowman,* 115 Cal., 345, in which, as well as in the two opinions of *City of Omaha v. Richards, supra,* the adjudicated cases are reviewed to sustain the proposition above stated. In an opinion on a rehearing of *Peters v. Bowman, supra,* it was pointed out that the principle of the turn-table cases should not be applied because a turn-table is not only a danger specially created by its owner but it is a danger differing in kind from those under consideration. "A pond," said Beatty, J., "although artificially created, is in nowise different from those natural ponds and streams which exist everywhere, and which involve the same dangers and present the same appearance and the same attractions to children. A turn-table can be rendered absolutely safe without destroying or materially impairing its usefulness, by simply locking it. A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose; and, therefore, to make it safe, it must either be filled or drained, or, in other words, destroyed. But ponds are always safe and often necessary, and where they do not exist naturally, must be created in order to store water for stock and for domestic purposes, irrigation, etc. Are we to hold that every owner of a pond or reservoir is liable for damages for any child that comes uninvited upon his premises and happens to fall in the water and drown? If so, then upon the same principle must the owner of a fruit tree be held liable for the death or injury of a child who, attracted by the fruit, climbs into the branches and falls out."

Referring back to the three classes of cases described in *Richards v. Connell, supra,* it may be said confidently that this case falls within neither. The intestate, uninvited by the city, on private property, took possession of

a fragment of a floating sidewalk, from which, accidentally, he fell into the water. Negligence is a fact to be shown by evidence. Its existence cannot be left to mere conjecture. (*Kilpatrick v. Richardson*, 37 Neb., 731, 40 Neb., 478; *Omaha & R. V. R. Co. v. Clarke*, 39 Neb., 65; *Omaha Street R. Co. v. Leigh*, 49 Neb., 782.) The negligence pleaded and proved must be the proximate cause of the injury of which complaint is made. (*Brotherton v. Manhattan Beach Improvement Co.*, 48 Neb., 563. There was not sufficient evidence to meet the first of the above requirements, and, as to the second, there was not only a failure of proof, but the instruction hereinbefore quoted proceeded upon the theory that the city could be held liable for the injury of a person on a state of facts showing that the injury, if any, was one to the mere property right of an individual not a party to the suit. For the errors indicated the judgment of the district court is

REVERSED.

HARRISON, J., not sitting.