## INDIANAPOLIS WATER COMPANY v. HAROLD.

[No. 21,229.   Filed March 13, 1908.]

1. PLEADING.—*Complaint.*—*Water-Works.*—*Maintaining Canal with Foot Log.*—*Injuries to Children.*—A complaint alleging that defendant water-works company knowingly maintained an open canal with a small foot log across same; that such log was without any guard, and was submerged in the water so that in walking over it, the log would sink under the surface and thus become slippery; that it was maintained near a street crossing, where children congregated; that the public was invited and induced to use such log in order to cross; that the decedent boy—nine years old—undertook to cross same, and by reason of such condition, he slipped, fell into the water and drowned, states a cause of action.   p. 170.

2. NEGLIGENCE. — *Water-Works.* — *Maintaining Foot Log Across Open Canal.*—*Injuries to Children.*—*Evidence.*—Evidence showing that defendant water-works company maintained, near a street crossing, a foot log with a hand-rail within reach of children, across an open canal; that the decedent boy nine years old undertook, after warning, to cross same and to swing a rock, suspended by a cord, into the canal, and that while so swinging such rock, he slipped and fell into the canal and drowned, does not support a verdict for damages in favor of the father.   p. 173.

From Marion Circuit Court (12,808); *Henry Clay Allen,* Judge.

Action by Milton S. Harold against the Indianapolis Water Company.   From a judgment on a verdict for plaintiff for $300, defendant appeals.   Transferred from Appellate Court under cl. 2, §1394 Burns 1908, Acts 1901, p. 565, §10.   *Reversed.*

*Baker & Daniels* and *Elmer W. Stout,* for appellant.
*Walter L. Carey* and *Joseph R. Williams,* for appellee.

MONTGOMERY, J.—Appellee brought this action to recover damages for the wrongful death of his minor son.   The allegations of the complaint are, in substance, as follows:

1. That appellant is a corporation organized under the laws of Indiana, and owns and controls a body of water known as "the canal," extending from the town of

Broad Ripple into the city of Indianapolis, and used for the purpose of supplying water to said city and its inhabitants; that the canal was from thirty feet to one hundred feet in width and very deep, and prior to the month of March, 1903, appellant had allowed a log or sill to be placed, and knowingly permitted the same to remain, across said canal near its intersection with Twentieth street in said city, which was used by appellant's employes, and by it knowingly permitted to be used by the public generally, as a means of crossing the canal; that a trodden and worn path led up to the log on both sides of the canal, and the public was induced and invited to use the log as a means of crossing; that there was no other means of crossing the canal within a distance of several hundred yards of the place where the log was situated, and no notice or warning of any kind was ever given by appellant to any one that the log was unsafe or dangerous as a means of crossing, but the log with its approaches was at all times held out to the public as a safe and available means of crossing the canal; that said log was ten or twelve inches in diameter and forty or fifty feet in length with two 2x6-inch planks laid on top of it, and left floating in the water with no stays, spikes or anything to hold it up except the force of the water, but it was fastened at each end to prevent it from floating away; that it was not braced or fastened in any other way, but was lying loose in the water and was very unstable and unsafe; that the top of the log was so close to the surface of the water that when the wind blew the water was blown over the top of the log, making it wet and slippery; that the log had a railing or banister on one side only, but at such a height as to make it of no use to a child in crossing the canal upon said log; that appellant was at all times fully aware of the dangerous and unsafe condition of said crossing, and had been warned that the same was a veritable death-trap, especially for children; that appellee's child was the second child drowned by falling off said log,

all of which appellant knew; that the water beneath the
log was very deep; that on March 7, 1903, appellee's son
Harry Harold, age nine years, in company with another
boy near the same age, having been requested by their
teacher to procure some pussy-willow blossoms, walked up
the canal for that purpose, and in attempting to cross on
said log appellee's said son, on account of the tottery, slip-
pery and unsafe condition of said log, fell therefrom into
the water and was drowned; that said child was of imma-
ture years, could not swim, had no notice that the log was
unsafe or dangerous, and was not warned in any way that
the crossing was dangerous or that the foot log was not in-
tended for the free use of the public; that said child was a
strong, healthy, bright boy, and possessed of all the natural
instincts of childhood; that the day on which he was
drowned was unusually warm, and the manner in which the
log was placed in the water was naturally inclined to at-
tract a child, and, being without warning of danger and of
immature judgment, he was thereby attracted to his death;
that on account of his tender years said child was *non sui
juris* and incapable of appreciating the danger there was in
crossing the canal on said log, and that the carelessness and
negligence of the appellant in placing and allowing said
log to be placed, and in permitting it to remain, in the posi-
tion described was the sole cause of said child's death, and
that by reason of such negligence appellee was deprived of
the services of his minor son and otherwise damaged.

Appellant's demurrer to this complaint on the ground
of insufficient facts, and also its motion for a new trial were
overruled by the court below, and these rulings have been
assigned and urged as errors upon appeal.

It is not made to appear from the allegations of the com-
plaint that the foot log subserved any useful purpose in
connection with appellant's business; but it is averred that
the log was maintained in an insecure and dangerous condi-
tion, with knowledge that it was a death-trap for children,

and that previously one child had been drowned by falling therefrom; that it was so maintained near the intersection of a public street of the city of Indianapolis with the canal, that the public was invited and induced to use the log as a means of crossing; that the deceased child was unable to appreciate, and ignorant of, the danger in crossing, was lured on by the instincts of childhood, and could not reach the hand rail, but fell from the log because of its tottery, slippery and unsafe condition. Conceding, as the demurrer does, that appellant, knowing the probable consequences, maintained the foot log at a place and in a condition to imperil the lives of persons, invited and induced to use it in ignorance of their danger, and that in these circumstances appellant's minor son, unable to comprehend his peril, fell from the log because of its unsafe condition, and was drowned, we think a cause of action is stated, and that the complaint was rightly held to be sufficient. *Young* v. *Harvey* (1861), 16 Ind. 314; *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 58 Am. Rep. 65; *Penso* v. *McCormick* (1890), 125 Ind. 116, 9 L. R. A. 313, 21 Am. St. 211; *City of Pekin* v. *McMahon* (1895), 154 Ill. 141, 39 N. E. 484, 45 Am. St. 114, 27 L. R. A. 206; *Brinkley Car Co.* v. *Cooper* (1895), 60 Ark. 545, 31 S. W. 154, 46 Am. St. 216; *Price* v. *Atchison Water Co.* (1897), 58 Kan. 551, 50 Pac. 450, 62 Am. St. 625; *Schmidt* v. *Kansas City Distilling Co.* (1886), 90 Mo. 284, 1 S. W. 865, 2 S. W. 417, 59 Am. Rep. 16.

Albert Richmond was with Harry Harold at the time of the accident. He testified that they were hunting pussy-willows, and crossed the canal on the Seventeenth street bridge, and there found a rock with a cord five or ten feet long tied to it, which they took turns in throwing into and pulling out of the water as they walked up the canal; that they walked past the foot log about a square, and then turned back; that they thought the log would break with them, but seeing a man cross upon it they

started to cross; that he was in front and told Harry not
to throw the rock in because he was afraid to cross and
might fall in, but does not know whether he threw it in or
not; that he felt the bridge shake, and turned around and
saw Harry falling off; that there was a banister along the
north side, which he took hold of when he turned around;
that the top of the log was about two inches above the water,
and they were not heavy enough to weigh it down, and it
did not weave or shake very much as they walked upon it;
that on top of the log were two 2x6-inch planks, and the
water rose a little in the crack between these planks as
they walked over; that at the time of the accident he was
eight years of age, and Harry was a year older and about
one-half a head taller. Ambrose Tillman testified that he
was on the west side of the canal and about seventy-five feet
away at the time the boy was drowned; that the boy had a
black dog with him, and a string tied to a rock or bat, and
was throwing it out or jumping it up and down in the water,
when his right foot slipped off and he went down. Jesse
Burt said he passed the boys on the log or bridge, and was
about two squares away when the accident occurred; that
when he passed there was a small black dog between the
boys, and the larger boy was down on one knee with a rope
or string with something on one end, and was jerking it
through the water, and he told the boy he would fall in if
he was not careful. Braxton Taylor testified that he was
walking north on the west bank of the canal and was about
fifty feet from the log at the time of the accident; that he
saw the boy fall in; that the boys were playing on the log,
and the dog was between them, standing still and barking;
that the boy that fell in had something tied on a string,
which he pitched in the canal, and which he was in the act
of throwing in when he fell. James Shirley was in com-
pany with the last witness, and said the smaller boy was
walking along holding on to the guard-rail, and the larger
boy had a rock, which he pitched out two or three times,

and stooped over in the act of throwing the rock when he fell; that just at that time a little, black dog ran behind him, but he could not say whether it touched the boy or not. Amos Lintner was three or four hundred feet away from the log at the time of the accident, and saw the boy in the water. As he passed down the west bank of the canal, the boys were throwing a rock with six or eight feet of hemp rope tied to it into the water. After the drowning he found the rope, in the water, caught on something which prevented it from sinking. These were all the witnesses who had any immediate knowledge of the circumstances attending the accident.

The evidence established the following additional facts: That this structure was made by bolting together two long boat gunwales, thirty inches in width, and nailing upon the top of them two 2x6-inch planks. It was floated up and down the canal, and at times was used as a support for men while mowing grass from the sloping banks of the canal, and at other times as a bridge or staging upon which to cross with wheelbarrows in repairing the canal. Carpenters in the employ of the Expanded Metal Fireproofing Company of Chicago, a contractor for the concrete work on a filter plant then being constructed by appellant, brought the log from a point farther up the canal, placed it in position, and spiked the hand-rail upon it, to afford themselves a convenient means of crossing and of reaching the streetcars. The east end of the foot log rested upon the ground, the west end upon a sill, the center was supported only by the water, and the ends were staked and secured by a rope or chain. A footpath ran along the east bank, and a sort of towpath along the west bank, parallel with the canal, and commons lay on both sides. The log was placed in this position in September, 1902, and remained until March following, with the knowledge of appellant. No signs or warnings to trespassers were posted or given, and the log was used as a means of crossing by people going to the filter

plant and to the cerealine mills.   The nearest houses to the point in question were about a square and one-half distant, and children occasionally played in the neighborhood of the canal.   A boy fell from another log, somewhat similar to this, and was drowned about two years before March, 1903.

In our opinion the verdict is without support from the evidence, and is contrary to law.   The actionable negligence charged against appellant was in knowingly maintaining a death-trap for children, and it was averred that the deceased fell from the log only because of its unstable, tottery, slick and unsafe condition.   It was not shown that the log was wet or slippery at the time of the accident, or was tottery and unsteady, and that such conditions contributed to the fatal fall.   On the contrary, the boy's companion testifies that the log stood two inches above the water, was not weighed down by them, and did not shake or vibrate much. The footbridge was not floating loosely in the water, but rested securely upon supports at both ends, and the hand-rail was not out of reach, but was available, and actually used by the smaller of the two boys.   The boys were not previously aware of the existence of the foot log, and came upon it casually; they were not lured from a highway by it, but they were sent by their teacher, and with the consent of their parents, upon a special mission, and there was no proof that the foot log was attractive to children.   There was no evidence that another boy had ever fallen from this log, or from another, anchored, equipped and constructed in the same manner.   The log was shown to have a legitimate use as a movable bridge or staging for workmen, and was a proper appliance for keeping the canal in repair.   It is manifest that there was not only a failure to establish a breach of duty and actionable negligence on the part of appellant, but that the accident resulted from a lack of proper care by the deceased.   He had been cautioned by Jesse Burt and by his companion, who, though a year younger, said they realized there was danger, and were afraid to

cross upon the log. The boy, with venturesome heedlessness characteristic of youth, toyed with his new found plaything, until a misstep caused him to lose his balance and fall into the water. The perils of deep water are instinctively known, and if it be insisted that this boy, nine years of age, did not possess such ordinary discretion as fairly to appreciate his danger, then it may be urged with propriety that he should not have been allowed to go in the vicinity of the canal attended only by a companion still more youthful. In determining a claim of legal responsibility for a misfortune, sad and deplorable as it may be, we must be guided by established principles, and not led by mere sentiment independent of the law. Cases closely resembling this have frequently engaged the attention of the courts, and the decisions are practically harmonious, that upon the facts here shown there can be no recovery. *Evansville, etc., R. Co.* v. *Griffin* (1885), 100 Ind. 221, 50 Am. Rep. 783; *City of Indianapolis* v. *Emmelman, supra; Savannah, etc., R. Co.* v. *Beavers* (1901), 113 Ga. 398, 39 S. E. 82, 54 L. R. A. 314; *Stendal* v. *Boyd* (1898), 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, 72 Am. St. 597; *Overholt* v. *Vieths* (1887), 93 Mo. 422, 6 S. W. 74, 3 Am. St. 557; *Richards* v. *Connell* (1895), 45 Neb. 467, 63 N. W. 915; *City of Omaha* v. *Bowman* (1897), 52 Neb. 293, 72 N. W. 316, 66 Am. St. 506, 40 L. R. A. 531; *Peters* v. *Bowman* (1896), 115 Cal. 345, 47 Pac. 113, 56 Am. St. 106; *Klix* v. *Nieman* (1887), 68 Wis. 271, 32 N. W. 223, 60 Am. Rep. 854; *Gillespie* v. *McGowan* (1882), 100 Pa. St. 144, 45 Am. Rep. 365; *Dobbins* v. *Missouri, etc., R. Co.* (1897), 91 Tex. 60, 41 S. W. 62, 66 Am. St. 856, 38 L. R. A. 573; *Moran* v. *Pullman Palace Car Co.* (1896), 134 Mo. 641, 36 S. W. 659, 56 Am. St. 543, 33 L. R. A. 755; *Cooper* v. *Overton* (1899), 102 Tenn. 211, 52 S. W. 183, 73 Am. St. 864, 45 L. R. A. 591; *Ritz* v. *City of Wheeling* (1898), 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 148; *Benson* v. *Baltimore Traction Co.* (1893), 77 Md. 535, 26 Atl.

973, 39 Am. St. 436, 20 L. R. A. 714. The motion for a new trial should have been sustained for the reasons before given.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.