PLOTZKI *v.* STANDARD OIL COMPANY OF INDIANA

[No. 28,638.   Filed June 2, 1950.   Rehearing denied
October 4, 1950.]

Emmert, C. J., and Gilkison, J., dissent with opinions.

*Rae M. Royce, Daniel F. Kelly;* and *Bomberger, Morthland & Royce* (of counsel), all of Hammond, for appellant.

*Richard P. Tinkham* and *John F. Beckman, Jr.,* both of Hammond, for appellee.

STARR, J.—The sole question here presented is the correctness of the ruling of the trial court in sustaining a demurrer to appellant's fifth amended complaint on the ground that the same did not state facts sufficient to constitute a cause of action.

This complaint is in one paragraph and is brought to recover for the wrongful death of Donald William Plotzki, son of the appellant. The complaint alleges that the said Donald William Plotzki died on June 16, 1944, at which time he was eleven years of age. That some time in the year of 1944 the defendant caused to be made an excavation on its real estate located in Hammond, Indiana. That said excavation was made about fifty yards from New York Avenue in said city and was in plain view from the sidewalk on and along the West side of said avenue and became filled with water; that the portion of the said avenue nearest to said excavation is in an area in said city inhabited and frequented by large numbers of children; that the bottom of said pool was unevenly excavated in a careless and negligent manner and that at certain places a small boy of the age of said Donald William Plotzki could wade, and at other points there were sharp drop-offs and holes, to-wit: about eight (8) feet in depth, made by the excavation of defendant; that the water in the pool was not clear and that the bottom could not be seen by children wading therein. That on the 16th day

of June, 1944, appellant's said son was attracted and went to said pool and that while wading therein stepped into one of said drop-offs and was drowned. That he had no knowledge of the uneven excavation of said pool or the numerous drop-offs and deep holes therein which were permitted to remain therein by defendant, and that he was entrapped by said drop-offs and deep holes and was too young to apprehend the alleged inherent dangers of said pool. That at the time of his death and prior thereto he and other children attracted to said pool were not warned in any manner by this defendant against said inherent dangers in said pool and that the proximate cause of his death was the negligence of the defendant and the breach of duty of the defendant toward children of tender age in maintaining and permitting the existence of said attractive nuisance, and failing to warn the said Donald William Plotzki of the dangers involved in his wading in said pool. Appellant also alleged that at the bottom of the pool and in the deep holes were pieces of foundation, rocks, cans, weeds and other debris but no other facts were alleged showing that this debris had any connection with decedent's death.

The demurrer was sustained on the ground that the facts alleged did not establish that the artificially created pond was an attractive nuisance.

It is our opinion that this demurrer was properly sustained. By the law of Indiana and the overwhelming weight of authority in this country a pond, pool, lake, stream or other body of water does not constitute an attractive nuisance. It was well said by Judge Flanagan in *Anderson* v. *Reith-Reilly Construction Co.* (1942), 112 Ind. App. 170, 44 N. E. 2d 184:

"Nature has created streams, lakes, and pools which attract children. Lurking in their waters is always the danger of drowning. Against this danger children are early instructed so that they are sufficiently presumed to know the danger so that if the owner of private property creates an artificial pool on his own property, merely duplicating the work of nature without adding any new danger, and a child, without invitation, ventures on the private property, enters the pool, and is drowned, the owner is not liable because of having created an 'attractive nuisance.' "

To the same effect see *City of Evansville* v. *Blue* (1937), 212 Ind. 130, 8 N. E. 2d 224; *Indianapolis Water Co.* v. *Harold* (1908), 170 Ind. 170, 83 N. E. 993; *Wood* v. *Consumers Co.* (1948), 334 Ill. App. 530, 79 N. E. 2d 826; *Stendal* v. *Boyd* (1898), 73 Minn. 53, 75 N. W. 735; *Thompson* v. *Illinois Central R. Co.* (1913), 105 Miss. 636, 63 So. 185; *Peters* v. *Bowman* (1896), 115 Cal. 345, 47 Pac. 113, 47 Pac. 598. This rule applies to a pond created artificially provided that it merely duplicates the work of nature without adding any new dangers. *Anderson* v. *Reith-Reilly Construction, supra; Peters* v. *Bowman, supra; Phipps* v. *Mitze* (1947), 116 Colo. 288, 180 P. 2d 233.

Appellant takes the position that sharp drops and deep holes in an artificially constructed pool constitute traps and hidden or latent dangers. With this we cannot agree. Such conditions are also found in natural ponds, pools, lakes, streams and other bodies of water, are common to nature and are not foreign to natural ponds, pools, lakes, streams and other bodies of water, and are not considered as traps or hidden dangers. *Moran* v. *Pullman Palace Car Co.* (1896), 134 Mo. 641, 36 S. W. 659; *Phipps* v. *Mitze, supra; Fiel* v. *City of Racine* (1930), 203 Wis. 149, 233 N. W. 611; *Washabaugh v. Northern Virginia Construc-*

*tion Co.* (1948), 187 Va. 767, 48 S. E. 2d 276; *McCall* v. *McCallie* (1933), 48 Ga. App. 99, 171 S. E. 843; *Thompson* v. *Illinois Central R. Co., supra.*

Appellant relies strongly upon the case of *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 9 N. E. 155, which case is not in point as it involved an excavation in a public street or path or immediately adjacent to it. Under the facts in that case an adult could have recovered for the same injuries. Appellant relies most strongly upon the case of *City of Indianapolis* v. *Williams* (1915), 58 Ind. App. 447, 108 N. E. 387. In our opinion this case was wrongfully decided and is based upon the minority view originally stated in the case of *City of Pekin* v. *McMahon* (1895), 154 Ill. 141, 39 N. E. 484, which case has been many times severely criticized by the courts of other states. See *Barnhart* v. *Chicago Milwaukee & St. Paul Ry. Co.* (1916), 89 Wash. 304, 154 Pac. 441; *Stendal* v. *Boyd, supra; Sullivan* v. *Huidekoper* (1906), 7 A. & E. Ann. Cas. 196, 27 App. Cas. (D. C.) 154; *Fiel* v. *City of Racine, supra; Peters* v. *Bowman, supra,* (in opinion on rehearing). The other cases relied upon by the appellant are not cases involving ponds or other bodies of water and are based upon the attractive nuisance doctrine as we understand the same.

For the reasons herein stated the judgment of the trial court is affirmed.

Emmert, C. J., and Gilkison, J., dissent.

## DISSENTING OPINION

EMMERT, C. J.—Courts, in declaring the common law, of necessity lag behind the collective sentiment and judgment of the people in the establishment of duties, rights and remedies. This delay is desirable from the

standpoint of the stability of the law.[1]   But when a decision and the reasoning to sustain it retrogresses to the *laissez faire* philosophy of the Industrial Revolution, an appeal by way of dissent should be made "to the brooding spirit of the law, to the intelligence of a future day."   Hughes, *The Supreme Court of the United States* (1947 Edition), p. 68.

It will not be necessary to make an extended examination of the cases, since my brother Gilkison has given exhaustive review of the authorities and the history of

[1] "That this development should be slow, is not only natural, but desirable.   To the writer it appears essential that courts of law should act as the final brake upon extremes of popular opinion and should protect the public from their own temporary following after the false gods of extreme sentimentalism and fashionable theorism.   It appears essential that they should not yield to new ideas until time has proved their permanence and their real place as a part of the fixed and settled national conviction, until they are seen to be a permanent habit of national thought.   None the less, while they should not yield to mere popular hysteria, it would appear that they should not over-rigidly adhere to obsolete methods of thought.   The great merit of the common law lies in its flexibility, and this flexibility exhibits itself, not merely in its ability to adapt old conceptions to new facts, but to absorb and apply what is settled and permanent in economic and ethical ideas. . . .   While not arguing for the immediate legal recognition of humanitarian duties it should not be forgotten that a system of law which lags too far behind the universally received conceptions of abstract justice, in the end must lose the sympathy, the confidence, perhaps even the respect of the community. . . .

"While courts of law should not yield to every passing current of popular thought, nonetheless, it appears inevitable that unless they adopt as legal those popular standards which they themselves, as men, regard as just and socially practicable, but which, as judges, they refuse to recognize solely because they are not the standards of the past of Brian, of Rolle, of Fineux, and of Coke; they will more and more lose their distinctive common law character as part of the machinery whereby free men do justice among themselves."   Bohlen, *Studies in the Law of Torts* (1926 Ed.), pp. 341, 342, 343.

the doctrine of attractive nuisance. Before the anomalous dicta in *Anderson* v. *Reith-Riley Const. Co.* (1942), 112 Ind. App. 170, 44 N. E. 2d 184, and the ubiquitous reasoning in *City of Evansville* v. *Blue* (1937), 212 Ind. 130, 8 N. E. 2d 224, there was no doubt that Indiana clearly permitted recovery on the doctrine. Until the decision in this appeal, the latest precedent was *Borinstein, et al.* v. *Hansbrough* (1948), 119 Ind. App. 134, 82 N. E. 2d 266. We denied transfer in this case, not on any defective petition to transfer, but on the merits. I am unable to perceive any material difference in the force generated by a pile of junk in the Borinstein case, and a pile of sand in the Anderson case, although the sand caused death while the junk only caused a crushed ankle. The result in the City of Evansville case was correct, since the city swimming pool was guarded by two lifeguards who were not shown to be guilty of any negligence, and there was no evidence to establish how long the decedent "was under the water, or when, and how, he was drowned." (Page 143.) But the error in the City of Evansville case lies in the statement made, that as a matter of law, children are guilty of contributory negligence in venturing near deep water. Such contributory negligence is a question for the jury. The gratuitous dicta in the Anderson case with reference to artificial bodies of water is equally fallacious.

The reasoning that there should be no difference, in determining non-liability, between a natural body of water and an artificially created body of water is wholly specious from the standpoint of causation, as well as human experience. The act of God creates a natural body of water, and from common experience we know that society, from the first settlement, accommodates itself and builds with reference to the existing conditions for which no man is responsible. But when man

acts affirmatively the general rule is he must use due care under the circumstances to avoid injuring others.

"A long and firmly settled principle of law which has grown out of a well ordered civil society is that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall neither encroach injuriously on the equal enjoyment of their property by others who have an equal right to the enjoyment of their property, nor be injurious to the community." *Pittsburgh, etc., R. Co.* v. *Chappell* (1914), 183 Ind. 141, 146, 147, 106 N. E. 403. The same principle extends to personal injuries. 45 C. J. 763, § 159.

It is for this court, after a full consideration and the balancing of the interests of property owners, the injured children and society, to determine as a matter of public policy what duty the land owners have to young children who may be technically trespassing. We would be blind to what we see in our everyday life if we did not realize the same rules should not apply to children that apply to adults. It is one thing to say that children may know danger, but it certainly does not follow that they appreciate or evaluate the danger.

It is a misdemeanor to pass a school bus when loading or unloading children. The school bus must have special signalling equipment. We constantly see the most elaborate precautions taken by means of special police officers, school patrols, stop signals and school zone signs, to afford safety to the marching lines of children crossing the public highways in Indianapolis going to and from school. Why? Because we know from years of experience that children are venturesome, playful, unattentive to danger and generally possessed of exuberant energy which expresses itself in countless ways

which involve a greater or lesser degree of danger. Nor would we if we could suppress their energies and make them old before their time. Their good health is their foundation for a productive life as adults. It is better for society to adjust itself to their nature than that we refuse protection for their life and limb. A primitive policy of survival of the fittest would not insure that only fit children survive in modern society—only the weak and the lucky would do that.

Should John Doe, who has the fee simple title to real estate adjoining a large grade school, be permitted to create a huge excavation within fifty yards of the school, with an uneven bottom so that it accumulates water in varying depth, and be under no duty to use due care to guard the excavation against boys of eleven years of age who would be attracted by the water on a hot day in June? My concept of the rights of private property does not include the *laissez faire* premise that the owner has no affirmative duty to use due care to protect the children. Nor is there any essential difference between such a case and the facts in this appeal.

To put such a duty in this case on the land owner would not place the same duty on every owner who creates an artificial body of water. The owner here was not under any public duty to create the risk, such as might exist in a much lesser degree in a water reservoir created by some municipality or water company. Nor would it be a holding that every farmer who creates a pond or lake for utility or conservation behind his own fences, nor even the land owner who may otherwise create an unguarded artificial body of water in the countryside, be under the same duties as the owner in a populous city such as Hammond. The strength of the common law has always been that it decides cases as they arise upon the facts presented, and such cases should be left for decision when they arise.

Certainly the interest of society and of the safety of children have not been served by denying a recovery on the admitted facts in this record. As suggested by my brother Gilkison, I do not believe the majority rule will long be the law of this jurisdiction.

## DISSENTING OPINION

GILKISON, J.—I dissent from the majority opinion herein for the following reasons.

The fifth amended complaint is based upon the doctrine of "attractive nuisance" and omitting caption and signature, is as follows:

"Comes now the plaintiff by counsel and for her Fifth Amended Complaint alleges and says:

"1. That the plaintiff, Sophia A. Plotzki, was the mother of Donald William Plotzki, who at the time of his death as hereinafter alleged, was eleven (11) years of age; that, prior to his death, John Plotski, the father of said Donald William Plotzki, had deserted his family; that said desertion continued to the time of the death of the said Donald William Plotzki and still continues; that, at the time of his death and prior thereto, the said Donald William Plotzki lived with this plaintiff who was his sole custodial parent.

"2. Plaintiff further says that on the 16th day of June, 1944, and for a long period of time prior thereto, the exact time being to plaintiff unknown but wholly within the knowledge of the defendant, the defendant was the owner of the real estate abutting on and along the west side of New York Avenue, in the vicinity of the point where 125th, 126th and 127th Streets in the City of Hammond, Indiana intersect the said New York Avenue.

"3. Plaintiff further says that some time in the month of April or May, 1944, the exact time being to plaintiff unknown but wholly within the knowledge of the defendant, the said defendant negligently caused an excavation to be made in said real estate, which excavation was negligently filled with

water, was located about fifty (50) yards from said New York Avenue, and was in plain view from the sidewalk on and along the west side of said New York Avenue; that said New York Avenue is in a residential area of said city inhabited and frequented by large numbers of children; that the bottom of said pool was unevenly excavated in a careless and negligent manner and that at certain places a small boy of the age of the said Donald William Plotzki could wade and at other points there were sharp drop-offs and deep holes, to-wit: eight (8) feet in depth; which said holes were made by the excavation of the defendant; that the bottom of said pool was negligently excavated by the defendant in such a manner that a small boy of the age of the said Donald William Plotzki could at one point be wading in water up to his knees and by taking one step could be in water over his head; that the water in said pool was not clear and that the bottom could not be seen by children wading in said water; that on the bottom of said pool and in said hole were broken pieces of foundation rock, cans, weeds and other debris negligently placed therein and permitted to accumulate therein by the defendant.

"4. Plaintiff further says that at all times hereinafter alleged, large numbers of children were attracted to said pool and were accustomed to wade and swim therein; that for a long period of time prior to the death of the said Donald William Plotzki as alleged herein, large numbers of children had been attracted to said pool and were accustomed to wade and swim therein daily in groups of twenty (20) or thirty (30) at one time; that the condition of said pool and the fact that the swimming pool attracted large numbers of children and the fact that large numbers of children waded and swam therein were known or in the exercise of ordinary care, should have been known to the defendant; that by reason of the facts hereinbefore alleged, said pool constituted an attractive nuisance.

"5. Plaintiff further says that on the 16th day of June, 1944, the said Donald William Plotzki wholly without the knowledge of this plaintiff was attracted to and went to the said pool which was negligently allowed to be and remain in a dangerous

condition near the street as aforesaid and while wading in said pool the said Donald William Plotzki stepped into one of the said drop offs and was drowned.

"6. Plaintiff further says that the said Donald William Plotzki had no knowledge of the uneven excavations of said pool and no knowledge of the numerous drop offs and deep holes in said pool made and permitted to remain therein by the negligence of the defendant and its negligent failure to take *precaustions* to guard or warn children of tender age of the hidden dangers in said pool; that the said Donald William Plotzki had no knowledge of the deep water in said pool arising from the numerous drop offs negligently created by the defendant and negligently permitted to remain therein; that the said Donald William Plotzki, who was eleven (11) years of age, was entrapped by said drop offs and deep holes and was too young to apprehend the dangers inherent in the dangers of said pool as hereinbefore alleged.

"7. Plaintiff further says that at the time of his death, said boy was a healthy, intelligent boy.

"8. Plaintiff further alleges that the time of the death of the said Donald William Plotzki, and prior thereto, the said Donald William Plotzki and other children attracted to said pool, were not warned by this defendant against the dangers inherent in said pool and that no warnings of any kind were posted in the vicinity of said pool.

"9. Plaintiff further alleges that the proximate cause of death of said Donald William Plotzki was the negligence of the defendant and the breach of duty of defendant towards children of tender age as set forth in the other allegations herein in maintaining and permitting the existence of said attractive nuisance and in failing to warn the said Donald William Plotzki of the dangers involved in his wading in said pool.

"10. Plaintiff further alleges that solely and proximately as a result of the negligence of the defendant as hereinbefore alleged she had been deprived of the services and earnings of the said Donald William Plotzki to her damage in the sum of Ten Thousand ($10,000.00) Dollars.

"WHEREFORE, the plaintiff prays judgment for the sum of Ten Thousand ($10,000.00) Dollars, costs and all other proper relief."

A demurrer to this fifth amended complaint, for the reason that it does not state facts sufficient to constitute a cause of action, was sustained. Appellant declined to plead further, elected to stand on her amended complaint and judgment was rendered against her. From this judgment she appeals.

The error assigned is that the "court erred in sustaining defendant's demurrer to the plaintiff's fifth amended complaint."

Of course, the demurrer admits the truth of all well pleaded facts contained in the complaint.

No motion was made by appellee to require appellant to state the facts necessary to sustain any conclusion alleged in her complaint, therefore, all conclusions of fact stated therein must be considered and held to be the allegation of all the facts required to sustain such conclusions when the same is necessary to the sufficiency of the complaint. Sec. 2-1005, Burns' 1946 Replacement. *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 640, 180 N. E. 596; *Budd* v. *Bd. Co. Comrs. St. Joseph Co.* (1939), 216 Ind. 35, 40, 22 N. E. 2d 973; *State ex rel. Penrod* v. *French* (1943), 222 Ind. 145, 150, 51 N. E. 2d 858; *State ex rel. Dept. of Financial Institutions* v. *Kaufman* (1941), 218 Ind. 74, 75, 30 N. E. 2d 978; *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314, 324, 325, 123 N. E. 409.

By their briefs the parties present the single question: Does the complaint state a cause of action on the doctrine of "attractive nuisance"?

The doctrine of "attractive nuisance" is usually considered by the text writers as an exception to the rule of nonliability to infant trespassers. 45 C. J., Negli-

gence, § 155, p. 758; 38 Am. Jur., Negligence, § 142, p. 802.

It has been well said that "this doctrine imposes liability for injuries to children, even though they are technical trespassers, where such injuries are the result of the failure of the owner or person in charge to take proper precautions to prevent injuries to children by instrumentalities or conditions which he should, in the exercise of ordinary judgment and prudence, know would naturally attract them into unsuspected danger." 45 C. J., Negligence, § 155, p. 758; 38 Am. Jur., Negligence, §142, p. 802. The doctrine is of English origin, probably the first, at least, the leading English case being *Lynch* v. *Nurdin* (1841), 1 Q. B. 29, (113 English Reprint 1041) ; 38 Am. Jur., Negligence, § 143, p. 804. The pertinent facts of that case are quoted in *Union Pacific R. Co.* v. *McDonald* (1894), 152 U. S. 262, 38 L. Ed. 434, and also in *Chicago, etc., R. Co.* v. *Fox* (1904), 38 Ind. App. 268, 273, 70 N. E. 81. The Supreme Court of the United States has rather frequently recognized and enforced the doctrine. See *The Sioux City and Pacific R. Co.* v. *Stout* (1874), 17 Wall. (84 U. S.) 657, 21 L. Ed. 745; *Baltimore & Potomac R. Co.* v. *Cumberland* (1900), 176 U. S. 232, 44 L. Ed. 447; *Union Pacific R. Co.* v. *McDonald* (1894), 152 U. S. 262, 38 L. Ed. 434, *supra*. See also *Heller Adm.* v. *New York, etc., R. Co.* (1920), 265 Fed. 192, 17 A. L. R. 823, and cases cited.

It followed and enforced the doctrine consistently, for a period of forty-eight years, until the discordant opinion of Mr. Justice Holmes, rendered in 1922 in *United Zinc & Chemical Co.* v. *Britt* (1922), 258 U. S. 268, 66 L. Ed. 615.

A number of cases in which the doctrine is not followed are cited in *Heller Adm.* v. *New York, New Haven*

& *Hartford Co.* (1920), 265 Fed. 192, 17 A. L. R. 823, *supra.* Also in *United Zinc and Chemical Co.* v. *Britt* (1922), 258 U. S. 268, 66 L. Ed. 615, 36 A. L. R. 28, *supra.* The jurisdictions that do not follow the "attractive nuisance" doctrine have been characterized as following a "hard doctrine"—the "Draconian doctrine," see Mr. Justice Clarke's dissent *United Zinc and Chemical Co.* v. *Britt*, p. 276, U. S., p. 618, L. Ed., *supra.* While those that follow it have been characterized as following the "humane" doctrine. For a further list of cases pro and con see 11 Harvard Law Review, pp. 447, 448.

Many jurisdictions, however, do follow the doctrine, and among these is our own. In *City of Indianapolis* v. *Williams* (1915), 58 Ind. App. 447, 454, 108 N. E. 387, speaking for the court, Moran, J., among other things, said:

> "Do the facts alleged in the third paragraph of complaint bring it within the doctrine of an 'attractive nuisance' or upon the doctrine upon which rest the 'turntable cases'? There are jurisdictions that do not recognize this doctrine. However, it is not an open question in this State and an individual or corporation is liable for injuries to a child *non sui juris* caused by leaving unguarded and exposed machinery or surroundings, which are of such a nature and character as to naturally tempt and allure children to play with or otherwise use the same. See also Chicago Etc. R. Co. v. Fox (1906), 38 Ind. App. 268, 70 N. E. 81; 1 Thornton *Negligence* § 435; Lewis v. Cleveland Etc. R. Co. (1908), 42 Ind. App. 337, 84 N. E. 23."

See also *Cincinnati etc. Spring Co.* v. *Brown* (1903), 32 Ind. App. 58, 69 N. E. 197; *Drew* v. *Lett* (1932), 95 Ind. App. 89, 95, 182 N. E. 547; *Binford* v. *Johnston* (1882), 82 Ind. 426, 42 Am. Rep. 508; *The Indianapolis, Peru and Chicago Railway Company* v. *Pitzer* (1886),

109 Ind. 179, 182 et seq., 9 N. E. 310, 10 N. E. 70; *The City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 9 N. E. 155; *Indianapolis Water Co.* v. *Harold* (1908), 170 Ind. 170, 173, 83 N. E. 993, and cases cited; *Knapp* v. *Doll* (1913), 180 Ind. 526, 103 N. E. 385. See Annotation 36 A. L. R. 34, 77; 39 A. L. R. 486; 45 A. L. R. 982; 53 A. L. R. 1344; 60 A. L. R. 1444.

While the law does not require the owner of premises to keep them in a safe condition for persons who come upon them without invitation either express or implied, and merely for their own pleasure or to gratify their curiosity, the attractive nuisance doctrine is a well defined exception to this rule in favor of children. A child of tender years who meets with an injury or death upon the premises of a private owner may be a technical trespasser, and the owner may be legally liable therefor, if the things causing the injury have been left exposed and unguarded and are of such a character as to be attractive to the child, appealing to his childish curiosity and instinct. Unguarded premises which are thus supplied with dangerous attractions have been regarded as holding out implied invitations to such children. If it should be held technically that this is not an invitation it may still remain an irresistible temptation to children, which may be an even stronger incentive than an invitation. *Drew* v. *Lett* (1932), 95 Ind. App. 89, 95, *supra; Lewis* v. *Cleveland etc. R. Co.* (1908), 42 Ind. App. 337, 339, 340, 84 N. E. 23; *Penso, by Next Friend* v. *McCormick et al.* (1890), 125 Ind. 116, 122, 25 N. E. 156.

> "The owner of land where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in safe condition; for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers, and mere licensees."

*Ramsay* v. *Tuthill Material Co.* (1920), 295 Ill. 395, 129 N. E. 127, 36 A. L. R. 23, 26; *City of Pekin* v. *McMahon* (1895), 154 Ill. 141, 27 L. R. A. 206, 45 Am. St. Rep. 114, 39 N. E. 481; *Drew* v. *Lett* (1932), 95 Ind. App. 89, 95, *supra; Wise* v. *Southern Indiana Gas & Electric Co.* (1941), 109 Ind. App. 681, 687, 34 N. E. 2d 975.

A sensible view of the doctrine and its application, is expressed by a contemporary author thus:

> "The possessor of land owes to trespassing children the duty of protecting them against all risks that are included in his duty to adult trespassers. *He also owes the duty to protect them against certain additional risks. . . .* The common law rule is that risks that are particularly dangerous to life and limb which are incidental to artificial structures on the land and which are likely to attract children thereto and the dangerous character of which are not likely to be recognized, must be reasonably guarded to protect children actually attracted thereby, although they may be trespassers.
>
> . . . The immature judgment of the child, of course, extends the possessor's duty to adequately safeguard the danger . . . Hazards that should be realized and appreciated by adults will be encountered by children of tender years without thought of danger. This factor, known to everyone of common understanding, produces a weighted test by which a defendant's conduct is to be measured in such cases. . . .
>
> ". . . If for any reason the possessor knew that children were likely to trespass on his land and thus become exposed to the dangerous and attractive devise the duty exists to use reasonable care to protect such children . . ." Harper, *Law of Torts,* § 93, pp. 219, 220 (My italics).

This court has expressed the rule well by Elliott, C. J. after citing many cases that recognizes the doctrine, as follows:

"The cases last cited all recognize the rule that children of tender years are not to be treated as persons of mature years. This is a reasonable and humane rule, and any other would be a cruel reproach to the law; but the law merits no such reproach, for, throughout all its branches, whether of tort or contract, there runs, . . . a line distinguishing children of years too few to have judgment or discretion, from those old enough to possess and exercise those faculties. This is a doctrine taught by every man's experience and sanctioned by our law. A departure from it would shock every one's sense of justice and humanity. . . . Dr. Wharton, in discussing the general subject, says: 'The protection of the helpless from spoliation is one of the cardinal duties of Christian civilization; and when those so helpless are young children, this duty is aided both by the instincts of nature and the true policy of the State' Wharton Neg., section 313. Mr. Thompson says: 'The general rule is, that where the injury is caused by the actual negligence of the company, the child can be expected to use discretion only in respect of its years; and the total incapacity of a child to know the danger and avoid it, shields it from responsibility for its acts. Greater care, therefore, must be exercised in reference to children than to adults; 1 Thompson Negl. 452. Another author says: When the trespasser is an infant, the railway company, on the one hand, is held bound to exercise a higher degree of care and caution than is required as to adults, and the infant, on the other hand, is not required to exercise a discretion and prudence beyond its years, but only that measure of sense and judgment which it may reasonably be expected to possess in view of its age.' Beach Cont. Neg. 211." *The Indianapolis, Peru and Chicago Railway Company* v. *Pitzer* (1887), 109 Ind. 179, 183, *supra*. See also *Drew* v. *Lett* (1932), 95 Ind. App. 89, 96, *supra*.

As we have said before, Indiana recognizes the doctrine of "attractive nuisance." A late recognition is found in *Anderson* v. *Reith-Riley Const. Co.* (1942), 112 Ind. App. 170, 172, 44 N. E. 2d 184, but there are

statements and dicta in that opinion—relied upon by appellee in the instant case, and upon which the majority opinion is based which, by the opinion, are now given effect as law in Indiana and effectively destroy the doctrine and overrule all the Indiana cases following it.

The objectionable statements and dicta are italicized in the following quotation thus:

"But the rule does not apply to *those dangerous conditions which are obvious and common to nature, against which danger children are presumed to have received early instructions.*

"Nature has created streams, lakes and pools which attract children. Lurking in their waters is always the danger of drowning. *Against this danger children are early instructed so that they are sufficiently presumed to know the danger that if the owner of private property creates an artificial pool on his own property, merely duplicating the work of nature without adding any new danger, and a child, without invitation, ventures on the private property, enters the pool and is drowned, the owner is not liable because of having created an 'attractive nuisance'.*"

These are atavistic, dogmatic statements, and cannot be the law in this jurisdiction, since no court may assume, without proof, that children are early instructed against the danger of drowning in an attractive pool. No court, without proof, may indulge a presumption that children know the danger of drowning lurking in an attractive pool constructed on private property or elsewhere. And it is certainly quite a bold and erroneous statement to say that a human being can "duplicate the work of nature." The complaint charges appellee with negligence. It may be assumed that by demurring to the complaint appellee is entitled to present any averments *contained in the complaint* indicat-

ing contributory negligence as a matter of law on the part of appellant's decedent or his mother that proximately contributed to the death complained of, as a reason why the demurrer should be sustained. *But such contributory negligence must affirmatively appear from the averments contained in the complaint, unaided by any presumptions of law or fact in favor of or against either party.* Neither negligence nor contributory negligence can be presumed or inferred as a matter of law from general conduct, or from the habits and instincts of mankind, or from the argument that men are likely to be careful in places of danger, or that children have received certain early instructions or that they are presumed to know of hidden dangers. *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 525, 527, 79 N. E. 499; *Evansville etc. R. Co.* v. *Berndt* (1909), 172 Ind. 697, 701, 702, 88 N. E. 612; *Southern Indiana R. Co.* v. *Peyton* (1901), 157 Ind. 690, 694, 61 N. E. 722; *Kilgore* v. *Gannon* (1916), 185 Ind. 682, 683, 689, 114 N. E. 446; *City of Logansport* v. *Green, Admx.* (1922), 192 Ind. 253, 259, 260, 135 N. E. 657; *Indianapolis etc., Tractor Co.* v. *Roach* (1922), 192 Ind. 384, 389, 135 N. E. 334; *Minardo* v. *State* (1932), 204 Ind. 422, 426, 183 N. E. 548; *Harris* v. *Indiana General Service Co.* (1934), 206 Ind. 351, 356, 189 N. E. 410; *Kelley* v. *Dickerson* (1930), 213 Ind. 624, 633, 13 N. E. 2d 535; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 549, 24 N. E. 2d 284; *Kaiser* v. *Happel* (1941), 219 Ind. 28, 30, 36 N. E. 2d 784; *Holstine* v. *Director, etc., Railroads* (1922), 77 Ind. App. 582, 601, 134 N. E. 303; *Indianapolis Traction Co.* v. *Monfort* (1923), 80 Ind. App. 639, 644, 139 N. E. 677; *Drew* v. *Lett* (1932), 95 Ind. App. 89, '95, *supra;* *Wise* v. *Southern Ind. Gas & Electric Co.* (1941), 109 Ind. App. 681, 693, *supra; Pennsylvania Railroad Com-*

*pany* v. *Lytle* (1941), 109 Ind. App. 318, 326, 34 N. E. 2d 939; *Munson* v. *Quinn* (1942), 110 Ind. App. 277, 279, 37 N. E. 2d 693. See also *Penso by Next Friend* v. *McCormick et al.* (1890), 125 Ind. 116, *supra.*

In *Munson* v. *Quinn* (1942), 110 Ind. App. at page 279, *supra,* Flanagan, J. speaking for the Appellate Court, correctly stated thus:

> "It is settled in this State that presumptions are not evidence and that neither courts nor juries have any right to presume any fact in issue which they are called upon to determine." (authorities).

This court, speaking by Willoughby, J., has correctly stated the law applicable, thus:

> "When the court can perceive that reasonable men might honestly differ in their conclusions, and the facts set out in the complaint are of a character to be reasonably subject to more than one inference or conclusion as to whether negligence or contributory negligence exists, the question is one for the jury, and cannot be determined as one of law."

*Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314, 325, 123 N. E. 409; *Indiana Union Traction Co.* v. *Love* (1912), 180 Ind. 442, 447, 99 N. E. 1005, and authorities cited. See also *City of Pekin* v. *McMahon* (1895), 154 Ill. 141, 152, 153, 27 L. R. A. 206, 210, *supra.*

The location of the pool is an important element for the consideration of the court in the determination of the sufficiency of the complaint. In this case it was located in a residential and thickly populated part of the city about fifty yards from the west side of New York Avenue in the vicinity of the point where 125th, 126th, and 127th Streets in the city of Hammond, Indiana, intersect New York Avenue, and in plain view from the sidewalk along the west side of that avenue. Dangerous pools in such locations frequently

have been held to be attractive nuisances. *City of Pekin* v. *McMahon* 1895), 154 Ill. 141, 147, *supra;* *City of Kansas City* v. *Siese et al.* (1905), 71 Kan. 283; *Price* v. *Atkinson Water Co.* (1897), 58 Kan. 551, 553; *Thompson* v. *Illinois Central R. Co.* (1913), 105 Miss. 636, 647, 47 L. R. A. (N. S.) 1101, 1105; *Davoren* v. *Kansas City* (1925), 308 Mo. 513, 273 S. W. 401, 40 A. L. R. 473, 481; *City of Omaha v. Richards* (1896), 49 Neb. 244, 68 N. W. 528.

If it had been located in a remote place, away from thickly populated places, beyond vision from the streets of cities and towns, as farm ponds, ponds made by quarries, gravel pits, or other mining operations; railroad or highway embankments outside and away from town or city streets, the attractive nuisance feature might or might not exist depending upon the facts shown to prevail in each particular case. *Thompson* v. *Illinois Central R. Co.* (1913), 105 Miss. 636, 650, 47 L. R. A. (N. S.) 1101, 1105, *supra.* See also *Thomas* v. *Anthony* (1913), 261 Ill. 288, 291; *The Sioux City and Pacific R. Co.* v. *Stout* (1874), 84 U. S. 657, *supra,* p. 661.

However, in this jurisdiction our courts have gone further than merely approving the "attractive nuisance" doctrine. In *Fort Wayne, etc. Traction Co.* v. *Stark* (1920), 74 Ind. App. 669, 671, 127 N. E. 460, the Appellate Court held:

> "It is not the law, as assumed by appellant, that one who maintains premises on which a dangerous thing is suffered to exist, is not liable for injuries thereby resulting to children, unless such instrumentality is what is termed an 'attractive nuisance.' In I Thompson, Negligence 944, the author, in discussing the liability to children, of one who suffers a dangerous agency to exist on his premises, correctly states the law as follows: 'Although the dangerous thing may not be what is termed an *attractive nuisance*—that is to say, may not have an

especial attraction for children by reason of their childish instincts,—yet where it is so *left exposed* that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them.' "

This statement of the law is quoted with approval in *Harris* v. *Indiana General Service Co.* (1934), 206 Ind. 351, at page 357, 189 N. E. 410.

Thus it appears that a liability for negligence in the injury of children may be incurred by a defendant even when the negligent act does not reach the degree of "want of care" that might be termed an "attractive nuisance."

It is safe to say that human life, by nature, is divided into three principal periods, thus: (1) childhood or infancy, (2) manhood and (3) old age.

In all countries children constitute a considerable portion of the total population, at all times and under all conditions. No matter how aged, wise or useful one may become, it is in the nature of things that he must have spent a considerable part of his life as a child. That part of his life is quite as important to him, his family, his community and his state as any other part. Everywhere, it is known as the impressionable period when the future adult may be molded in health, stature, morals, religion and wisdom. The state spends more in the education of its children than for any other single purpose. It has sought to educate its youth in health, morals, safety and wisdom, for during youth is the time when such accomplishments can be built in the individual, and stored for use in manhood. During the period of childhood, by nature children are carefree, courageous, adventurous, daring, fearless, brave. Our

law recognizes this situation and has organized Juvenile Courts on the theory that the regular criminal code and procedure is too stern and rigid to be applied to children. 43 C. J. S., Infants, § 93, p. 210. We have arranged for their probation without inflicting the stern penalty provided by law for the guilty. We have established special schools for major offenders among them, far removed from prisons and prison discipline.

For the religious training of the children our churches have established Sunday-schools, catechisms, boy scouts and other special plans of instruction.

For their physical development local governments have established public gymnasiums, swimming-pools, ball-parks, stadiums, gymnastic fields and opportunities, all for the training in body, mind and spirit of our youth.

Our law protects children from the injurious effects of their contracts. It limits their liability for torts. 27 Am. Jur., Infants, § 92, p. 814. It protects their property and personal rights by legislation and judicial decisions. See 27 Am. Jur., Infants, VII. Special Protection of Infants by Law, §§ 101 to 112 inclusive, p. 822, 833. Courts are now considered "parens patriae" "the supreme guardian of all infants, charged with the protection alike of their personal and property rights." See 27 Am. Jur., § 101, p. 822, *supra*. See also 19 Am. Jur., Equity, § 152, p. 145.

All this indicates that agreeable with an ancient adage, "As the twig is bent so the tree is inclined" we have long ago learned a fundamental truth concerning the development of man, and we have patterned our laws accordingly.

An ancient Teacher authoritatively said "Suffer the little children and forbid them not . . . " thus recognizing the fundamental importance to mankind of the

period of childhood and suggesting a proper governmental relationship thereto. Many centuries before the above comment of the Great Teacher when a noted criminal tragedy was enacted in Canaan the Patriarch Jacob's son, Reuben, said to his brethren "Sin not against the child." Undoubtedly legal recognition of the usual or natural propensities of childhood is of ancient origin and cannot properly be characterized as "sentimental" "maudlin" or "soft." On the contrary it is factual and real—unaffected by softness or sentiment and has existed throughout all recorded time. It is a throw back beyond *Lynch* v. *Nurdin, supra,* probably to the Greek Draco, 621 B. C., to say that established legal principles do not recognize the natural propensities of childhood, and offer no protection to children while exercising such propensities. See statement of Elliott, C. J. in *The Indianapolis, Peru and Chicago Railway Company* v. *Pitzer, supra.*

One who asserts this ancient idea is necessarily blinded by an inordinate love of and loyalty to the rights of property, and a corresponding depreciation of the right to life and safety of little children. Without intruding upon the property rights of any one it is safe to say that all property is but material created for the use and benefit of man; but no man is wholly material nor was he created for the use or benefit of property. When the legal rights of a property owner to do as he pleases with his property, and the right of a little child to life and safety come in conflict, and is submitted to the courts for decision, it should not be too difficult to decide which is the superior right. That is the sole question presented in this appeal.

In deciding this question in a similar case the Supreme Court of Alabama reasoned thus:

"Ownership of property may carry with it the right of the owner to use and to exclude others from the use of the property, but however exclusive may be the owner's rights, he is subject always to the maxim *"sic utero tuo ut alienum non laedas."* Common prudence forbids that one may arrange even on his own premises that which he knows, or in the exercise of common judgment and prudence ought to know, will naturally attract others into unsuspected danger or great bodily harm. *It is the apparent probability of danger rather than the rights of property that determines the duty and measure of care required of the author of such a contrivance, for ordinarily the duty of avoiding known danger to others may under some circumstances operate to require care for persons who may be at the place of danger without right."* (My italics).

*Alabama etc., R. Co.* v. *Crocker* (1901), 131 Ala. 584, 590, 31 So. 561. Quoted with approval in *Chicago etc. Co.* v. *Fox* (1904), 38 Ind. App. 268, 278, *supra,* and *Drew* v. *Lett* (1932), 95 Ind. App. 89, 96, *supra.* See also *Wise* v. *Southern Indiana Gas & Electric Co.* (1941), 109 Ind. App. 681, 686, 34 N. E. 2d 975.

I agree with the Alabama case cited, and no matter how exclusive may be the property rights of the appellee to the use of the pond in question, it is the apparent probability of danger to the children of the community, rather than the rights of property of appellee that determines its duty and the measure of care required of it under the situation prevailing.

It will be noted that the complaint avers that the bottom of the pool was by defendant's negligence unevenly excavated making sharp "dropoffs and deep holes" so that a boy of the age of decedent could be wading in water knee deep and by taking one additional step would be in water over his head, that it had negligently placed broken pieces of foundation rock, cans and other

debris in the bottom of the pool; that the water was not clear and the bottom could not be seen by the wading children. That decedent had no knowledge of the deep "dropoffs" negligently created by defendant in the pool, was entrapped thereby and being too young to know of the inherent dangers, stepped into one of the "dropoffs" and was drowned. These averments are admitted by the demurrer.

Certainly these positive averments present a situation not common to the stream, lake or pool created by nature, so that if the statements and dicta in *Anderson* v. *Reith-Riley Const. Co., supra,* were the law in this jurisdiction, the complaint still is sufficient to withstand the demurrer. *City of Elwood* v. *Addison* (1901), 26 Ind. App. 28, 33, 59 N. E. 47.

If we apply the most restrictive rule to the doctrine found in the decisions and text books, thus:

> "The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, . . . But if the apparatus is involved in character, *so as to embody hidden perils, and the defendant knew or ought to have known that children would yield to its attraction, it is proper to permit a recovery.* (My italics).

38 Am. Jur., Negligence, § 151, p. 817; *Nashville Lumber Co.* v. *Busbee* (1911), 100 Ark. 76, 139 S. W. 301, 38 L. R. A. (N. S.) 754; *Brinilson* v. *Chicago & N. W. R. Co.* (1911), 144 Wis. 614, 129 N. W. 664, 32 L. R. A. (N. S.) 359.

Measured by this rule the complaint states facts sufficient to constitute a cause of action, for it avers the latent dangers and hidden perils in the artificial pool and alleges that the death of the child was caused thereby. This the demurrer admits.

In *Bottorff* v. *South Construction Co.* (1916), 184 Ind. 221, 227, 110 N. E. 977, this court, speaking by Erwin,

Judge, has divided infancy into three periods thus: (1) That up to seven years of age, during which an infant is conclusively presumed incapable of committing crime. (2) Between seven and fourteen years of age, during which the infant is presumed to be incapable of committing crime but the presumption may be rebutted. (3) After fourteen, the infant is presumed to be capable of committing crime and can be held therefor as an adult. After so classifying the period of infancy, the learned judge then said:

"It seems that the greater weight of authority is to the effect that the same rule applies in negligence cases." (authorities).

Cited with approval in: *Kent* v. *Interstate Public Service Co.* (1929), 97 Ind. App. 13, 19, 168 N. E. 465; *Brush* v. *Public Service Co. of Indiana* (1939), 106 Ind. App. 554, 562, 21 N. E. 2d 83; *Fuller* v. *Thrun* (1941), 109 Ind. App. 407, 413, 31 N. E. 2d 670, quoted with approval: *Indianapolis Railways* v. *Williams* (1945), 115 Ind. App. 383, 396, 59 N. E. 2d 586; 38 Am. Jur., Negligence, § 205, p. 890.

Thus it appears that in this case there can be no presumption of negligence on the part of the eleven year old deceased boy, and it was error of the trial court to sustain the demurrer. The statements and dicta in *Anderson* v. *Reith-Riley Const. Co.*, 112 Ind. App. 170, *supra,* noted herein, are erroneous.

The case of *City of Evansville* v. *Blue* (1937), 212 Ind. 130, 8 N. E. 2d 224, is readily distinguished from the instant case. In that case the action was against a municipal corporation and the pool was a regularly constructed swimming pool of the city of Evansville with clear markers indicating the exact location of the shallow and deep water. It was carefully policed and guarded by life-guards employed by the city. The com-

plaint was based upon alleged negligence of the city in its alleged failure to properly supervise the pool and not upon the theory of attractive nuisance. It is true the opinion contains the unpersuasive and unacceptable dicta: "Healthy boys of eleven years and younger must be deemed to know the perils of deep water, . . . and . . . boys no more than adults may voluntarily and negligently put themselves in a position of known danger and charge others with responsibility of protecting them against their own voluntary acts . . ." This dicta would make the boy responsible for his trespasses back to the day he was born. Thus it carries its own condemnation. It is more Draconian than the Holmes decision in *United Zinc & Chemical Co.* v. *Britt, supra,* and is starkly materialistic. This dicta should be disapproved. In the instant case the defendant is a private owner and the pool had no markers to show that there were deep holes, or where they were located; it was wholly unpoliced, unfenced, unguarded and without notice of danger, and the complaint is based upon the theory of "attractive nuisance."

The majority opinion is based upon the materialistic dicta in the *Reith-Riley* case, *supra,* and the equally materialistic and unnatural dicta in *Evansville* v. *Blue, supra.* The opinion thus elevates this vicious dicta to the point of being the law of Indiana—for the time being. Thereby the voice of property is made all powerful, and the lives and safety of little children are made servient to that voice. This unnatural materialistic rule cannot endure.

That a nice looking pool of water located near and in plain view of a much traveled street in a densely populated part of a city, where a large number of children in groups of twenty or thirty at a time were

wading and swimming, and had been doing so for a long period prior to the date in question as alleged in the complaint; was unfenced, unguarded, and there were no notices forbidding trespassing or suggesting danger, would be a very attractive sight to an eleven year old boy on a hot day in the middle of June is quite compelling. *Davoren* v. *Kansas City* (1925), 308 Mo. 513, 273 S. W. 401, 40 A. L. R. 473, 481. Appellee just could not have been ignorant of this situation. Under the conditions shown by the complaint appellee was charged with the duty of (a) fencing the pool, posting notices forbidding trespassing or suggesting danger, (b) removing the attraction, (c) keeping children out of the pool or (d) taking reasonable precautions for their safety.

Since the fifth amended complaint states facts sufficient to constitute a cause of action under our law as noted herein it was error to sustain the demurrer.

The judgment should be reversed with instructions to overrule the demurrer to the fifth amended complaint.

NOTE.—Reported in 92 N. E. 2d 632.