## HARNESS *v.* CHURCHMEMBERS LIFE INSURANCE COMPANY, ETC. ET AL.

[No. 29,885. Filed June 1, 1961.]

*Charles W. Symmes* and *Lewis C. Bose,* both of Indianapolis, for appellant.

*Rocap, Rocap, Reese & Robb, William C. Harrison* and *Johnson & Weaver,* all of Indianapolis, for appellees.

JACKSON, J.—This case comes to us on transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215 (First), Burns' 1946 Replacement. See: *Harness* v. *Churchmembers Life Insurance Company* (1959), 130 Ind. App. 185, 163 N. E. 2d 37 for opinion of the Appellate Court.

This action was brought by the appellant, as natural father of Stephen Harness, a minor, six years of age, against the defendants, and each of them, for the wrongful death of his son.

Appellant's complaint, in substance, alleged that defendant, Churchmembers Life Insurance Company, was and is a domestic mutual insurance corporation engaged in writing life, health and other insurance; that on the 14th day of December 1951, and prior thereto the defendant corporation was the owner of certain real estate in Marion County, Indiana. Sometime in September 1951, the exact date being unknown to appellant, appellee insurance company began the excavation of a pit for the installation of a septic tank as an incident to the construction of a house on such real estate. The appellee insurance company employed one George F. Kopetsky to make such excavation and installation and hired one Glen Ashmore to supervise all of said construction. On or before November 1, 1951, the defendants and each of them completed the excavation of the pit on such lot for such septic tank. The pit was approximately six feet wide running north and south and twelve feet long running east and west, and

on its south and west sides large and steep mounds of earth sloped directly into the pit. The pit sat unused from November 1, 1951, until after December 14, 1951, and during such interim water had been allowed and permitted by defendants to accumulate in it to a depth of six feet. The pit was located on such real estate about 125 feet from Fairfax Road and about 125 feet from Keystone Avenue, in a residential district having a large number of children residing in and near the real estate owned by appellant corporation. All during the time of construction, large numbers of children were attracted to and accustomed to playing on said lot and around the pit and mounds of earth on its south and west side. On and prior to December 14, 1951, the pit with its mounds of dirt and accumulated water had frozen, was covered with snow, was an artificial condition not found in nature, was latently and inherently dangerous to children, particularly children of six years of age who did not and could not appreciate such danger on account of their youth, and constituted an attractive nuisance to children.

Appellant further alleges that appellee insurance corporation could have eliminated such dangers by leveling the pit, posting signs, erecting fences or pumping out the water for $10.00 or less, with no loss of the use of said lot or pit and that all of the foregoing facts were known to the appellees and each of them.

Appellant further alleges that on December 14, 1951, about 4:30 P.M. as dusk was falling Stephen Harness left his home approximately 150 yards southeast of the pit and went to the pit to play on the mounds of dirt around it, unaware of the latent dangers of the pit on such date, subsequently while playing on the mounds of dirt around the pit he slid or slipped onto the

ice in the pit which broke under his weight and he drowned in the water of the pit.

Appellant in rhetorical paragraph eleven of his amended complaint alleges nine specific acts of negligence on the part of appellees, which paagraph reads as follows:

"11. The death of Stephen Harness as hereinbefore alleged, was directly and proximately caused by the negligent acts of the defendants, and each of them:

"1. Negligently excavating a pit of the size and dimensions of the Pit, and permitting the same to become negligently filled with water.

"2. Negligently permitting said above described Pit to remain filled with water.

"3. Negligently failing to post any signs of warning of the dangers upon said premises.

"4. Negligently failing to post signs forbidding trespassers.

"5. Negligently failing to remove said latent danger, inherent in the Pit as alleged above, or take proper steps to remove same, it being in such a negligent and dangerous condition for approximately six (6) weeks.

"6. Negligently failing to provide a suitable covering for the top of said Pit.

"7. Negligently permitting the mounds of dirt to be placed on certain sides of the Pit with a straight drop-off into the Pit filled with water.

"8. Negligently failing to maintain a fence of [or] other proper means of guarding the Pit.

"9. Negligently failing to warn children of tender ages of the hidden dangers on said premises."

Appellant further alleges that at the time of his death Stephen Harness was a healthy, intelligent boy, and that the proximate cause of the death of such child was

due to the negligence of the appellees, and each of them, and that thereby appellant has been deprived of the services and earnings of said child to appellant's damage in the sum of $20,000.

On the 7th day of September 1956, the appellees, Churchmembers Life Insurance Company and Glen Ashmore, filed the following demurrer to appellant's amended complaint, which omitting the formal parts, reads as follows:

"Come now the defendants Churchmembers Life Insurance Company and Glen Ashmore and separately and severally demur to plaintiff's amended complaint for the reason that said amended complaint does not state facts sufficient to constitute a cause of action against these defendants.

### "MEMORANDUM IN SUPPORT OF DEMURRER

"Plaintiff's amended complaint does not state a cause of action against these defendants for each of the following reasons:

"1. The facts alleged therein do not establish the artifically [artificially] created pit was an attractive nuisance.

"2. The facts alleged show that the plaintiff's decedent was a trespasser upon the land of the defendant Churchmembers Life Insurance Company.

"3. The facts alleged do not show that the pit described therein was inherently dangerous.

"4. The facts alleged do not show that the pit described therein created an unreasonable risk to children of tender years."

On the 8th day of January, 1958, the appellee, George F. Kopetsky, filed his demurrer to appellant's amended complaint, which omitting the formal parts, reads as follows:

"Comes now the defendant George F. Kopetsky and demurrers to the plaintiff's complaint for the following reasons:

"1.   That said complaint does not state facts sufficient to constitute a cause of action against this defendant.

.   .   .   .   .

"MEMORANDUM

"Plaintiff's complaint attempts to set up sufficient facts to base his cause of action on the legal principals of attractive nuisance but the facts alleged show that the doctrine is inapplicable here.

"The plaintiff fails to show facts which would attach liability to the defendant George F. Kopetsky and therefore his complaint should be dismissed."

On the 9th day of January, 1958, the trial court sustained the separate demurrers of the appellees. The appellant refused to plead over and the court entered judgment for each of the appellees.

Thus the sole question presented here is the correctness of the trial court's ruling in sustaining the demurrer to the amended complaint.

We recognize that water, whether in its natural state in streams, lakes or pools, and its contiguous banks, edges and shallows exerts a tremendous, and sometimes fatal fascination for children of all ages, as well as adults. We likewise realize that during the period of childhood, by nature children are carefree, curious, courageous, adventurous, daring, fearless and brave, and that as a result are attracted to what to them is the unusual, the new, the different, the modification or change of a familiar scene or object. Indeed such curiosity is not limited to children.

The appellant here urges the abandonment of the "attractive nuisance" rule now in effect in Indiana, and

the adoption of the doctrine based on section 339, Restatement of the Law of Torts, Volume 2, commonly known as the Restatement Rule, which reads as follows:

> "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
>
> "(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
>
> "(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
>
> "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
>
> "(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

Jurisdictions applying the Restatement Rule are cited in 8 A. L. R. 2d 1286.

The careful and thorough presentation of the appellant's propositions and authorities are persuasive, but not conclusive, no reason has been advanced to cause us to change the rule as it now exists in Indiana. We point out that even if the Restatement Rule was to be applied, recovery would be denied in most drowning cases where the danger is in plain view and is obvious.

> ". . . In addition, it may be assumed that dangers which are commonly known, such as the usual risks of water, falling from a height, moving machinery, and of soil caving in, will be understood and appreciated *by any child old enough to be allowed to wander.*" (Our emphasis.) 32 Ind. L. J. 85.

The appellant contends that the pit and surrounding banks were an attractive nuisance because they were not covered or fenced by the appellees. The law on fences in relation to attractive nuisances is well set out in 38 Am. Jur., Negligence, §151, p. 818 as follows:

". . . The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, and affords no basis for a recovery where the injury complained of was produced by a peril of an obvious or patent character. A danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril. Pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children. For this reason, the proprietor is under no obligation, as a rule, to fence or otherwise guard such places, and he will not be liable for injuries to children who may have fallen therein."

The most recent decisive cases in point in Indiana are: *Lockridge* v. *Standard Oil Co., Inc.* (1954), 124 Ind. App. 257, 114 N. E. 2d 807; *Neal, Admr.* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 111 N. E. 2d 280; *Plotzki* v. *Standard Oil Co.* (1950), 228 Ind. 518, 92 N. E. 2d 632; *Anderson* v. *Reith-Riley Const. Co.* (1942), 112 Ind. App. 170, 44 N. E. 2d 184.

We conclude that the action of the trial court in sustaining the demurrers to the amended complaint was correct, and the judgment of the trial court is therefore affirmed.

Bobbitt, J., concurs.

Achor, J., concurs in result.

Arterburn, J., dissents with opinion.

Landis, C. J., concurs in dissent.

## DISSENTING OPINION

ARTERBURN, J.—The complaint describes a pit or hole artifically created, not in the category of a pond. The deceased six-year-old child was a trespasser at the time he was drowned. The pit had sides which were steep. It was permitted to fill with water to a depth of about six feet during a period of six weeks during which time it froze over. Mounds of earth around the pit sloped steeply to the ice. The dangerous condition was latent and hidden as to a six-year-old child, but without question would be patent and observable to any mature individual. Another characteristic existed, namely, the attractiveness of any construction work not only to mature individuals, but particularly to children.

The difficulty here is in defining the vague doctrine of attractive nuisance. The attempt to formulate a rule to govern cases of this kind has resulted in a wide variety of hopelessly conflicting cases. Most jurisdictions follow the principle in the turn-table case, *Sioux City and Pacific R. R. Co.* v. *Stout* (1874), 84 U. S. 657, 21 L. Ed. 745. This is adopted in the Restatement of Torts, §339 (1934).

As a general proposition, the possessor of land is not liable for harm to trespassers. Like most principles of law there are certain exceptions. An increasing regard for human safety has led to the development of the so-called principle of "attractive nuisances" as concerns trespassing children because of their lack of understanding and appreciation of dangers and the rights of owners of land.

The decisions attempt to compromise between the interest of society in protecting children against their natural inclinations and the interest of landowners to use their land with reasonable freedom.

The landowner is not liable for the natural condition of his land or where he merely attempts to duplicate the work of nature. While there was not an unanimity as to the facts in *Plotzki* v. *Standard Oil Co.* (1950), 228 Ind. 518, 92 N. E. 2d 632, the principle was correctly stated:

> "By the law of Indiana and the overwhelming weight of authority in this country a pond, pool, lake, stream or other body of water does not constitute an attractive nuisance. . . . This rule applies to a pond created artifically *provided that it merely duplicates the work of nature without adding any new dangers.*" (Our italics.) *Plotzki* v. *Standard Oil Co. of Indiana* (1950), 228 Ind. 518, 520, 521, 92 N. E. 2d 632, 633, 634.

Here we have an artificial condition created which does not simulate a natural condition such as a pond.

The allegations in the complaint show the accessability of the location to children in the neighborhood. One of the elements of the attractive nuisance principle is the foreseeability of the attractiveness of the structure for children. The doctrine does not make a landowner an insurer of trespassing children; neither should it place an unusual burden on those engaged in construction work. With that thought in mind, the law looks at the measure of care required and the relatively inexpensive measures which might be used to avoid the risk of danger to children.

The impracticability of guarding the premises against such dangers is a consideration in determining liability in this class of cases. The complaint here alleges that a comparatively small expenditure of the sum of $10.00 could have eliminated the danger by pumping the pit dry. The pleadings further state that the pit was permitted to remain in the condition alleged for approxi-

mately six weeks. The statements in the complaint take the case out of the ordinary construction work. The allegations (which we must assume as true for the purpose of the demurrer) show the construction work was not carried on expeditiously, but a considerable period of time elapsed after the pit was dug. Coupling that allegation with the statement that a small expenditure could have avoided the dangerous condition, (which of course would have to be proved on the trial) we feel this case may be distinguished from the ordinary construction case. 8 A. L. R. 2d 1254 (1949).

The case of *Neal, Admr.* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 111 N. E. 2d 280, differs on the ground that it emphasizes the difference between a patent and a latent danger, holding that the conditions in the construction of the house which caused the injury were patent and observable, and therefore did not fall within the requirements of an attractive nuisance. Indiana allows recovery under the Restatement of Torts (Vol. 2, §339) in attractive nuisance cases. 32 Ind. L. J. 75 (1956) ; 26 Ind. L. J. 266, p. 269.

The allegations of the complaint conform to the Restatement. Therefore I feel the complaint states a good cause of action and the judgment of the trial court should be reversed with directions to overrule the demurrer to the complaint.

Landis, C. J., concurs.

NOTE.—Reported in 175 N. E. 2d 132.